No. 19,145.

A. M. ECHTERNACH, *Appellee*, v. JOSEPH MONCRIEF et al., *Appellants*.

. SYLLABUS BY THE COURT.

SALE—*Stock in Corporation—Written Contract to Repurchase —Valid—Measure of Damages.* Where stock in a corporation was sold upon a written contract whereby the vendors agreed, at the option of the vendee, to repurchase the ·stock four years later at the same price with interest, the vendee, in electing to resell to the vendors, may recover the price fixed in the contract; and the vendee is not limited to damages measured by the difference between the market value of the stock at the time of the breach and the sum named in the contract, although he delayed action for over a year, such delay being occasioned ·solely by the solicitations and representations that, if given time, the vendors could and would comply with their obligation.

Appeal from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed April 10, 1915. Affirmed. .

*Robert Stone,* and *George T. McDermott,* both of Topeka, for the appellants.

*A. M. Jackson,* and *A. L. Noble,* both of Winfield, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: On September 11, 1906, the plaintiff and defendants entered into a written contract whereby the latter agreed to purchase some land in the Green river valley in the state of Utah, and to incorporate a land or town-site company to develop the property. The contract further provided:

"The party of the second part hereby agrees to purchase Thirty (30) shares of stock bearing a par value of $3,000.00 and to pay Two Thousand Two Hundred and Fifty ($2,250.00) Dollars on or before Jan. 1st, 1907, upon the proper delivery of the stock certificates, the company having been legally organized according to the laws of the state of Utah, and being ready for business.

"The parties of the first part, in consideration of the covenants and agreements of the party of the second part, hereby agree to guarantee said stock in this manner, namely, That they, the said parties of the first part, agree to purchase said thirty (30) shares of stock of the party of the second part four years after the date of the issue of said stock for the sum of Two Thousand Two Hundred and Fifty ($2,250.00) Dollars, with interest thereon at eight per cent (8 per cent) per annum from the time of issue, at the option of the party of the second part."

The corporation was organized, and stock sold to plaintiff as per contract. The corporate lands were acquired and an orchardizing project was developed. On December 23, 1910, the plaintiff addressed the defendants as follows:

"GENTLEMEN:

"It is my desire that you purchase, on the 23rd day of January, 1911, 30 shares of stock of the Green River Fruit & Land Company for the sum of $2,250.00 with interest for four years at 8 per cent per annum, amounting to $720.00 according to the terms of a certain contract dated the 11th day of September, 1906, between J. Moncrief, W. A. Cook and D. D. Potter of the first

part and A. M. Echternach of the second part. By the terms of this contract you have agreed to purchase this stock four years after its issue if I desired to sell.

"Very truly yours,
"A. M. ECHTERNACH."

About the date when defendants were bound to repurchase plaintiff's stock, January 23, 1911, they requested that they be given until April 1, 1911, to comply with their contract. About the latter date, plaintiff made another demand for compliance and tendered the stock to defendant Moncrief, one of the parties to the written contract. On April 1, 1911, defendants failed to comply with their contract, but the record shows that at various intervals during that year and extending into the early months of 1912, an extensive correspondence was carried on between the parties and their counsel, the gist of which was to urge plaintiff's forbearance and patience; and, in one instance at least, on November 20, 1911, counsel for defendants suggested to plaintiff what his legal remedy would be, and said: "I don't see anything to do but be patient. They are as anxious to clean up as you are. They are doing all they can. Give them what time they have to have." Various interviews between plaintiff and some of the defendants were to the same effect. Defendants kept plaintiff advised of their various projected deals by which they hoped to be able to take up his stock, and this induced plaintiff to wait. On February 29, 1912, plaintiff turned over the matter to his attorney, and he called upon the defendant Moncrief and requested payment. Moncrief told him the defendants had certain deals in prospect within the next thirty or sixty days and gave him a detailed outline of the moneys they expected to realize and requested plaintiff's attorney to wait until May or June.

Action was filed April 18, 1912. The petition alleged and the answer admitted a tender of the stock to defendant Moncrief on April 1, 1912, and the stock was

tendered in court.    From a judgment in plaintiff's favor as per the terms of the written contract, defendants appeal.

It is urged by appellants that plaintiff's remedy was for damages measured by the difference between the agreed price and the market value of the stock on January 23, 1911, which was the date of default; that no sufficient tender of the stock was made by plaintiff; and that plaintiff could not wait a year, watching the rise and fall of the value of the stock, and then recover upon the original contract according to its terms.

First let us dispose of the question of delay.    This delay was occasioned at the urgent and repeated solicitation of defendants and by their representations that with forbearance and patience on the part of plaintiff they would be in a position to comply with their obligation.    Has plaintiff altered his situation for the worse by this concession?    Equity would presume that the defendants were acting in good faith during the period when they were urging plaintiff to be patient, and that there was a reasonable basis for their hope that they would be able to realize on some of their deals and thus fulfill their obligation.    Surely defendants can not be heard to say that these representations were merely to secure a better position for themselves and a worse one for plaintiff.    (16 Cyc. 747, 749.)    It is urged for defendants that plaintiff should not be permitted to watch the rise and fall of his stock for a whole year and, when the failure of the corporate project was obvious, to hold them to their original agreement.    That contention would be good but for the fact that plaintiff's delay in bringing his action was not occasioned through any such purpose.    He did not concern himself about the market value of his shares.    It is doubtful if they ever had any market value.    Nor does the record show that plaintiff ever varied from his position to hold defendants to their contract.    It is true that he looked into some propositions whereby he might be able to dispose of

his stock elsewhere to relieve the defendants, and at one time he asked for some data concerning the status of the corporation. This was to obtain credit for himself because of his forbearance toward defendants.

It is fundamental that a person is not prejudiced *in pais* from relying on the representations of another against whom he has a legal claim. (*Palmer v. Meiners,* 17 Kan. 478, 483; *Hubbell v. South Hutchinson,* 64 Kan. 645, 68 Pac. 52.)

Next, as to the measure of damages. We think that matter was concluded between the parties in their original contract. Nor is it necessary to indulge in refinements as to whether this was an executory or executed contract. Part of the contract was executed when plaintiff paid his money and received his shares of stock. A further consideration for his money was defendant's promise to buy back the shares at the same price plus eight per cent interest on January 23, 1911, if plaintiff desired to resell. Counsel for appellants say: "It is a game at which he can not lose, and the defendants have no chance to win." But the defendants made their own bargain, and it was not a contract against public policy; nor is it easy to discern why it should not be enforced according to its terms. (36 Cyc. 625.) Why should plaintiff be called upon to find a market to sell his shares, and assume the burden of justifying the fairness and diligence of the sale, and be limited in his recovery to the difference between that selling price and the face of his contract? If the delay was occasioned by plaintiff's fault, and not through forbearance induced by defendants, that rule might be proper; but even in such a case the existence of a market and a market value of his shares would have to be presumed.

In *Campbell v. Woods,* 122 Mo. App. 719, 99 S. W. 468, it was said:

"W agreed to take from C at a certain time certain stocks at an agreed price. At the time C tendered the

Echternach v. Moncrief.

stock and demanded the price, W refused to accept the stock or pay the price, *Held,* the measure of damages was the contract price and not the difference between the market value and the contract price." (Syl.)

In the opinion it was said:

"It is true that the rule amounts, practically, to specific performance of contracts. But that is no argument against its utility or propriety, but, on the contrary, the best of reasons for its enforcement. The nearer the rules of law can be made to conform to those of equity, the more effective and just will be the judgments of the courts. Can there be any good reason assigned why the plaintiff's damages should not be assessed at the value fixed by the contract? He comes into court with the capital stock and tenders it to the vendee and asks for the purchase price—no more, no less. His demand is refused by the vendee on the ground that the weight of authority gives him only the difference between the contract price and what it would sell for on the market. Should he accept such as the law, he must go upon the market and sell the stock, and then sue for the difference. After the trouble and expense of selling the property, it devolves upon him to show, not what he realized on the resale, but what was the reasonable market value of the property, which a jury might conclude was more than what he in fact realized. And, as said in *Crown Vinegar & Spice Co. v. Wehrs,* 59 Mo. App. 493, the rule also protects the vendee in all his rights under the contract. It is safe to say that, where a vendor is so situated that he is in a condition to fully comply with his contract by a tender to the vendee of the property sold and does so, and demands the purchase price, the contract may be said to have been executed, and he is entitled to recover the contract price of the property, upon the refusal of the vendee to accept and pay for the same. And such is this case." (p. 725.)

Helliwell on Stock and Stockholders states both sides of the rule:

"As indicated heretofore, although specific performance of a contract of purchase and sale of shares will not, in certain cases, be decreed, an action for damages may nevertheless lie against the party failing to

perform his part of the contract. When the failure to perform is on the part of the vendor, the measure of damages will be the difference between the contract price and the market price of the stock at the time and place of delivery. . . .. When the failure to perform is on the part of the vendee, the vendor may sell, and hold the vendee for the difference between the amount received and the contract price; or, if he elect not to sell, he may recover from the vendee the difference between the contract price and the market value at the time when the stock was to be delivered and the demand was made. It has been held, also, that where the vendee refuses to accept the stock and pay therefor upon proper tender, the amount of the damages may be the entire contract price." (§ 189.)

A question is raised as to the sufficiency of the tender. A tender may be implied, or it may be waived. A tender might fairly be implied in plaintiff's original communication to defendants announcing his election to sell his shares. It is not even intimated that the shares would not be forthcoming on payment therefor. A tender was made near the close of the first extension of time sought and obtained by defendants. Tenders sufficient were made at other times, including that made by bringing the shares into court.

In *Acme Food Co. v. Older,* 64 W. Va. 255, 61 S. E. 235, 17 L. R. A., n. s., 807, it was said:

"There may be an executed contract, passing title, without delivery of possession, as in the case of the retention of a seller's lien. There, a count for goods sold and delivered could not be maintained, but one for goods bargained and sold could be, for the contract is complete and the seller entitled to recover the price, although the goods have not been delivered. It is an executed contract. *Buskirk Bros. v. Peck,* 57 W. Va. 360. See, also, *Simmons v. Swift,* 5 B. & C. 857; *Rhode v. Thwaite,* 6 B. & C. 388; *Atkinson v. Bell,* 8 B. & C. 277." (p. 257.)

(See, also, *Grant v. Pendery,* 15 Kan. 236; *Piazzek v. Harman,* 79 Kan. 855, 98 Pac. 771; 35 Cyc. 531.)

The judgment is affirmed.