TUTHILL, Appellant, v. SHERMAN, Respondent.

(154 N. W. 518.)

(File No. 3696.   Opinion filed October 18, 1915.)

1.  **Contracts—Sale of Corporate Stock—Mutual Covenants as Consideration.**

Where plaintiff agreed in writing to sell, and defendant agreed to buy, twenty shares of corporate stock, for $3500.00, with 6% interest from December 20, 1906, the time of purchase

to be before December 20, 1911, optional with defendant, who was to have any dividends that might be paid on the stock prior to date of purchase, **held,** that the mutual covenants of the contract constituted adequate consideration, the one for the other.

2. **Same—Executed, or Executory, Sale?—Title, Passing of, Effect.**
Said contract was not a contract of sale, but a contract for a sale, under which the title to the stock remained vested in plaintiff, the contract showing that the parties did not intend an immediate transfer.

3. **Same—Executory Sale—Lapse of Time, Effect—Title—Tender, Necessity for.**
Under a contract of sale in which plaintiff agreed to sell and defendant agreed to buy, certain corporate stock at a specified price with 6% interest from a certain date, the time of purchase to be before a certain future date, optional with vendee, he to have any dividends that might be paid on the stock prior to date of purchase, **held,** that the mere lapse of time on or before which the purchase was to be made did not operate to execute the contract, and only a proper and timely tender of the stock would execute said sale and vest title in vendee.

4. **Contract for Sale—Title, Passing of, by Tender of Performance— Evidence of Tender—Directed Verdict**
Under a contract for the sale of corporate stock, which gave the vendee an option to fix the date of purchase on some date before a certain date, no tender by the vendor, unaccompanied by an acceptance, would vest title to the stock in vendee prior to that date; and the mere writing of a letter by vendor in which he advised vendee that he meant to send the certificate of stock but forgot to get it from his box, or the mere signing of his name to an assignment on the back of the stock certificate, leaving assignee's name in blank, and thereupon returning it to his private box, without advising vendee that he had assigned the stock to him, could not vest title to the stock in vendee either prior to the specified date of purchase or at any other time; and trial court erred in directing a verdict for plaintiff, vendor, upon such evidence.

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by S. G. Tuthill against P. F. Sherman, to recover purchase price under an alleged sale of corporate stock to defendant. From an order granting defendant a new trial, plaintiff appeals. Affirmed.

*Boyce, Warren & Fairbank,* for Respondent.

*U. S. G. Cherry,* and *Herbert Abbott,* for Respondent.

(3) To point three of the opinion, appellant cited:

Mechem on Sales, Vol. 1, Secs. 1, 2, 3, 4, 5, 483, 35 Cyc. 274-276; Decker v. Furniss, 14 N. Y. 611; Acme Food Co. v. Older, 17 L. R. A. (N. S.) 807; Goddard v. Binney, 15 Am. Rep. 112; Mason v. Decker, 72 N. Y. 595; Lincoln Shoe Mfg. Co. v. Sheldon, 62 N. W. 480; Wade v. Moffett, 74 Am. Dec. 79.

(4) To point four of the opinion, appellant cited:

Howard v. Galbraith, 109 Pac. 889 (Cal.); Eames v. Haver, 43 Pac. 1120 (Cal.); Dowagiac Mfg. Co. v. Higginbotham, S. D. 91 N. W. 330.

WHITING, J. The trial court directed a verdict for plaintiff, and then granted defendant's motion for a new trial. This appeal is from the order granting the new trial. Plaintiff sued to recover the sum of $3,500, and interest, which he claimed to be due him upon the sale of certain corporate stock under a written contract entered into by him, as party of the first part, with defendant, as party of the second part. That portion of the contract material to our present discussion is in words and figures as follows:

"Tuthill, party of the first part, hereby agrees to sell and * * * Sherman, party of the second part, hereby agrees to buy, * * * twenty * * * shares of the capital stock of the Queen City Fire Insurance Company, * * * the purchase price to be thirty-five hundred dollars, * * * with six per cent. * * * interest from December 20, 1906, time of purchase to be before December 20, 1911, optional with the said Sherman, * * * said Sherman to have any dividends that may be paid on said stock prior to date of purchase."

The printed record contains a full statement of the settled record, including the specifications of errors presented to the trial court upon respondent's motion for new trial. Some of the specifications raised the question of the sufficiency of the complaint to support the rulings of the trial court upon evidence offered in support of the cause of action sought to be established upon the trial. The order appealed from must be sustained for other reasons, and, under the undisputed facts revealed upon this trial and the views of this court as hereinafter expressed, it will become necessary for the appellant, before another trial of this cause, to seek an amendment of his complaint. We therefore

deem it unnecessary to discuss the sufficiency of the present complaint to support the said rulings.

Respondent contends that a new trial was properly granted because the trial court erred in taking from the jury the question of whether the contract sued upon had been procured through appellant's fraud. Inasmuch as the evidence submitted upon another trial may not be identical with that received upon this trial, any expression of our views upon this ruling of the court could subserve no useful purpose.

[1] Respondent contends that the contract was without consideration, and therefore not enforceable. This contention is without merit. We may entirely disregard an alleged previous agreement, which, if it existed, was at least a material inducement leading respondent to enter into the contract sued upon; the mutual covenants of the written contract constituted adequate consideration the one for the other.

An examination of the contract reveals that it contained an absolute promise by the one party to sell, and by the other to buy, the stock, but left it optional with the respondent to delay the consummation of such transfer until December 20, 1911. October 26, 1911, appellant wrote respondent calling attention to the fact that the time for closing this deal was approaching. In answer respondent wrote that he had not forgotten his obligation, and that he expected to pay appellant before the time expired. November 28, 1911, appellant wrote respondent:

"That insurance company stock is in my box downtown. I meant to have brought it over and sent to you to-day, but forgot it. Shall I send it to you at St. Louis or at Como? You may want to use it before December 20th."

Appellant testified that after the time of writing this letter, and upon the same or the next day, he signed the printed form of assignment on the back of the certificate of stock; that the name of the assignee was left blank in such assignment; that the blank assignment was executed with the intent to send same to respondent, but that he changed his mind and thought he would await a reply as to where to send it to; that he did not hear from respondent, and therefore did not forward the certificate, but retained the same and had it at the time of the trial. No tender of the certificate was made in the complaint or upon the trial.

In answer to the last letter above referred to, respondent, shortly before December 20th, wrote that he would not be able to take the stock until in January. Appellant wrote again in January, calling attention to this matter and asking for a report as to what he could depend upon. Respondent answered, explaining why he had not remitted and assuring appellant that he believed he would be able to send the money in a short time. Again in February respondent wrote advising appellant that he expected to send the money soon.

The court directed a verdict for the full contract price, and this without any proof that the stock had become absolutely worthless. Respondent contends that the court erred in directing the verdict for this amount; that, as there was no evidence upon which to base any other finding as to damages, it erred in not directing a verdict for respondent; and that, owing to these errors, it properly granted a new trial. Sections 2302 and 2303, Civ. Code, provide:

"Sec. 2302. The detriment caused by the breach of a buyer's agreement to accept and pay for personal property, the title to which is vested in him, is deemed to be the contract price.

"Sec. 2303. The detriment cause by the breach of a buyer's agreement to accept and pay for personal property, the title to which is not vested in him, is deemed to be:

"1. If the property has been resold, pursuant to section 2151, the excess, if any, of the amount due from the buyer, under the contract, over the net proceeds of the resale; or,

"2. If the property has not been resold in the manner prescribed by section 2151, the excess, if any, of the amount due from the buyer, under the contract, over the value to the seller, together with the excess, if any, of the expenses properly incurred in carrying the property to market, over those which would have been incurred for the carriage thereof, if the buyer had accepted it."

If appellant was entitled to recover in this action, it is conceded that the amount of such recovery depended upon whether or not the title to the stock ever became vested in defendant. If such title did not become vested in defendant, the measure of

damages adopted by the court was wrong, and its order granting a new trial should be sustained.

While the complaint herein was evidently drawn upon the sole theory that the title to the stock vested in the respondent upon the execution of the written contract, appellant now contends: (1) That the written contract operated to transfer title to the stock to respondent upon delivery of the contract. (2) That, when the time for payment elapsed, December 20, 1911, the law at once executed the sale by lapse of the agreed time and passed the title instantly by virtue of the original contract. (3) That, under the terms of the contract, appellant was not bound to deliver, but respondent was bound to come to the vendor and get, the property; that the vendor, by placing his indorsement on the back of the certificate, did all that was required of him; that nothing further remained to be done, and that a tender of delivery on the part of the vendor was not necessary in order to pass title. (4) That, if an offer of performance was necessary, the offer in the letter of November 28th was sufficient, inasmuch as appellant was entitled to the purchase price before parting with possession. (5) That respondent waived a tender: (a) By requesting time to pay and by promising to pay after December 20, 1911, such request and promise being an acceptance of the property and authorizing appellant to retain possession for respondent until respondent should send the money; and (b) by denying liability in his answer and alleging the contract to be invalid, it thus appearing that any tender would have been useless. (6) That the measure of damages is not controlled by section 2303, because respondent did not refuse to accept and pay for the stock, but, after the date for payment, expressly accepted the property and repeatedly promised to pay the stipulated price; that, these subsequent promises being set forth in the complaint, the suit is upon them as well as upon the original contract.

[2-4] The contract sued on was not a contract of sale, but a contract for sale, under which the title to the subject-matter thereof remained vested in the plaintiff. A reading of the contract shows that the parties did not intend an immediate transfer. The contract provides that the vendor "agrees to sell" and the vendee "agrees to buy"; that "the time of purchase to be before December 20, 1911"; that the vendee should receive "any dividends that

may be paid on said stock prior to date of purchase"—this last provision would have been meaningless in a contract of present sale. The intent of the parties to contract for a future sale is too clear for question. The parties having entered into an executory contract for the sale of this stock, what, if anything, has happened to convert this into an executed sale so that title has vested in the vendee? Appellant contends that mere lapse of time has done this—that when December 20, 1911, arrived the law executed the contract and passed the title. He has cited no authority to support such contention. While it is true that the parties could have contracted that the title should pass upon a certain date without any act upon the part of either party, yet there is nothing peculiar in the wording of the contract before us to indicate any such intent. If mere lapse of time executes this contract, then all question of tender is eliminated, and, without any tender, in fact without any communication between these parties during the existence of this contract, and with the certificates of stock hidden in the vendor's private box, when December 20, 1911, arrived, title to this stock vested in the vendee without payment or tender of the purchase price. If this were true, and the appellant, instead of bringing this action, had sold the stock as his own, he would have been liable for the conversion of the same. It is clear to us that the parties hereto did not intend that mere lapse of time should execute this sale, and we are of the opinion that nothing but a proper and timely tender of the stock would execute such sale and pass the title to the respondent. It must be borne in mind that we are not called upon to determine what steps were necessary upon the part of appellant to entitle him to bring an action to recover damages under section 2303, supra—such an action would be brought only when the sale remains executory and the title to the stock still in the vendor. The question before us is: What was necessary to place the title to this stock in respondent? Until such title was in respondent, appellant could not recover under section 2302, supra—the only section upon which the verdict could stand. It is quite possible that the facts proven would support an action under section 2303 based upon the theory that respondent broke the contract while the title to the stock was in appellant, but the same facts would be entirely insufficient to support an action under section 2302, which must be based upon the

theory that respondent broke the contract after such title had vested in him. Prior to December 20, 1911, any attempted tender was of no effect unless the stock was accepted by respondent as his property. The option to fix the date for consummating the sale was in respondent, and appellant was powerless, through any tender unaccompanied by an acceptance, to vest the title to the stock in him prior to that day. Let us note the facts upon which appellant bases a claim of tender sufficient to pass title. Twenty-two days before respondent was bound to close the sale appellant advised respondent by letter that he meant to have sent the certificate of stock to him that day, but forgot to get it from his box. If appellant had actually sent the certificate to him before the expiration of the time within which respondent had a right to exercise his option, the stock would still have remained the property of appellant, at least until December 20th, unless prior thereto respondent did something to show that he exercised his option. The mere writing of the letter of November 28th did not have the effect of passing title. What else did appellant do? The next day after writing such letter—being 21 days before respondent was bound to close the sale—appellant went to his private box, got out the certificate of stock, and signed his name to a blank assignment on the back thereof; he did not fill in the name of the intended assignee; and he returned the certificate to his private box and never advised respondent that he had assigned the stock to him. If by doing these thing in November, 1911, appellant could and did vest respondent with the title to such stock, then he could have vested such title in respondent in the same manner the day the contract was entered into—a power certainly not contemplated by the parties. The stock in question was the property of appellant at the time this action was brought. Appellant has cited numerous decisions in support of his various contentions. An examination of the same will find that none support appellant's claims. In several, as in Lassing v. James, 107 Cal. 348, 40 Pac. 534, the sale was executed when the contract was entered into. In some, as in Baker v. McDonald, 74 Neb. 595, 104 N. W. 923, 1 L. R. A. (N. S.) 474, the contract left nothing to be done but the selection of the property purchased from a larger amount and such selection had been made. In some, as in Hatch v. Standard Oil Co., 100 U. S. 124, 25 L. Ed. 554, there had been a complete

delivery by placing the property at an agreed place, and nothing remained to be done but take certain steps to ascertain the value of the goods. In some, as in Goddard v. Binney, 115 Mass. 450, 15 Am. Rep. 112, it was the sale of an article to be manufactured under a special order—a class of cases where the law holds it to be the intent of the parties that title shall pass when the article has been manufactured and is ready for delivery. In others, as in Echternach v. Moncrief, 94 Kan. 754, 147 Pac. 860, where the contract was much like the one before us, after the option period had expired, the vendor actually tendered the property to the vendee, and also tendered the same by bringing it into court. Appellant especially relies upon the decision in Acme Food Co. v. Older, 64 W. Va. 255, 61 S. E. 235, 17 L. R. A. (N. S.) 807. In this case there is an exhaustive discussion of the whole subject of executed and executory sales, as well as of the several rules of damages applicable under varying circumstances. A careful reading of this decision will show that it does not support appellant's contentions. It upholds, upon reason and the decisions of courts, the rules of damages declared by sections 2302, 2303, supra; it is an authority for a holding that, under the facts of the case now before us, the sale never became executed, thus vesting title to the stock in respondent.

The order appealed from is affirmed.

POLLEY, J., concurs in the result.