No. 22,719.

*In re* The Estate of W. W. MILLS, Deceased (THE CENTRAL TRUST COMPANY, as Administrator, etc., *Appellant,* v. ISAAC ADAMS [Claimant], *Appellee*).

OPINION DENYING A REHEARING.

SYLLABUS BY THE COURT.

SALE ON CREDIT—*Title Passed—Seller's Lien—Buyer Defaulted—Seller Resold—Seller's Remedy.* Goods were sold, title vested in the buyer, notes were given for the price, and the seller retained possession of the goods under a seller's lien. The buyer defaulted, and the seller elected to resell the goods. *Held,* the seller's remedy and the rule respecting damages are the same as if title had not passed and the seller had fixed his damages by resale.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion denying a rehearing filed October 9, 1920. (For original opinion of reversal see *ante,* p. 126, 190 Pac. 755.)

*James A. Troutman, Bennett R. Wheeler, S. M. Brewster,* and *John L. Hunt,* all of Topeka, for the appellant.

*Z. T. Hazen,* of Topeka, for the appellee; *Isaac Adams,* of Denver, Colo., *pro se.*

The opinion of the court was delivered by

BURCH, J.: In a petition for rehearing filed by Adams it is said: "This cash payment and these eight notes were in *payment* of the purchase price of this stock." (The italics are in the petition.) Later on in the petition the petitioner presumably contends—he offers to bet—that no court has ever held that a sale for an agreed price, part of the purchase money paid, notes executed for the balance, and the seller retaining possession until the notes are paid, "*does not constitute a sale on credit.*" (The italics are in the petition.) The petitioner will be allowed to settle this controversy with himself, in his own way. It is elementary law that money is not paid by a promise to pay. A note is not regarded as payment of the debt for which it is given unless there is an express agreement to that effect. Without more, the giving of a note for the price of goods sold merely postpones right of action on the contract of sale until expiration of the period of credit stipulated in the note. In this instance the memorandum of sale made full payment of price depend on payment of the notes; that is, credit was extended until maturity of the notes.

Time and again in the petition the court is accused of treating the contract as rescinded. The argument of the petitioner's adversary was that rescission occurred. The court gave a paragraph of the opinion to the subject, and held that the contract of sale was not rescinded.

The petitioner says:

"You have cited in your opinion the case of *White Walnut Coal Company v. Krescent Coal and Mining Company*, 42 L. R. A., n. s., 669, in support of your decision in this case."

The coal company case is then discussed, and the petitioner concludes it is distinguishable from his case. This court made no reference whatever to the coal company case. The court referred to an editorial note, beginning on page 669 of volume 42 of L. R. A., n. s., and containing pertinent authorities on page 672.

The petitioner says: "This court has treated this as an *executory contract*, when in *fact* it was an *executed contract*." (The italics are in the petition.) The court considered it un-

necessary to employ the expressions "executory contract" and "executed contract," and they do not appear in the opinion. The court chose to deal directly with the facts of the transaction, rather than give a name to it and then argue from the abstraction. The court was all the more inclined to adopt this method because of the confusion in the authorities respecting the meaning of the term "sale," and respecting application of the terms "executory" and "executed" to contracts of sale. In this connection the petitioner cites the case of *Echternach v. Moncrief,* 94 Kan. 754, 147 Pac. 860, which quotes from *Acme Food Co. v. Older,* 64 W. Va. 255, 17 L. R. A., n. s., 807, as follows:

"There may be an executed contract, passing title, without delivery of possession, as in the case of the retention of a seller's lien. There, a count for goods sold and delivered could not be maintained, but one for goods bargained and sold could be, for the contract is complete and the seller entitled to recover the price, although the goods have not been delivered. It is an executed contract." (*Echternach v. Moncrief,* supra, p. 760.)

The petitioner says that if this quotation does not state the law, it is likely to mislead the profession.

It may be observed that the word "executed," in the first line of the quotation, and the last sentence of the quotation, may be omitted without impairing its force; but it states the law, and should not mislead any one familiar with the law of pleading and the law of sales. Of course there could be no common-law count for goods sold and delivered, because while there had been a sale, there had been no delivery. Of course there could be a common-law count for goods bargained and sold, because all the elements of a bargain and sale were present. The words "bargained and sold," in a common-law declaration against a buyer of goods, import a sale which vested title to the property in the buyer. In the hypothetical case title had passed, and the buyer was entitled to recover price, although the goods had not been delivered because retained under a seller's lien. The situation was the same as it was in this case, before the petitioner elected to resell. He still held custody of the goods for the buyer when price was paid, and the buyer still had title to the goods. We are now dealing with an entirely different situation, created by act of the petitioner.

The court freely concedes that according to good authority the contract in this case is properly classifiable as executed; but the fact is not of the slightest importance. The contract was executed because nothing remained to be done to constitute a completed sale, although price had not been paid and the goods had not been delivered. The prime effect of a sale—the vesting of title to the goods in the buyer—had been accomplished. It does not follow, however, that the seller could deprive the buyer of title, by resale of the goods, and still demand price.

When the petitioner resold the goods, he made a radical change in the relation of himself and of the buyer to the goods. He no longer held them for the buyer, and the buyer no longer owned them. Having chosen not to keep the goods to be delivered to the owner on payment of price, he could not sue for price. Goods on one side and price on the other resemble opposite terms of an equation, and whenever goods are eliminated, there is no equivalent for price. The right of the seller must then be stated in another way, that is, in terms of damages. Election to resell was an election to liquidate, as far as proceeds of resale would go, damages resulting from breach of the buyer's obligation to pay price and take the goods, and then to rely on an action for damages for the remainder of the loss, if any. In case of a fair resale, the measure of damages is the difference between the net resale price and the contract price. The rule is precisely the same as if the contract had remained executory, and the seller had fixed his damages by proper resale. (*Hardwick v. Can Co.,* 113 Tenn. 657.)

It requires no argument to demonstrate that the theory underlying recovery of damages is inconsistent with the theory underlying recovery of price. This is just as true when the contract is executed as when it is executory. The two theories are utterly incompatible with each other, and because of that fact, election to proceed according to one of them renders the other unavailable. (*Ireland v. Waymire,* 107 Kan. 384, 191 Pac. 304, and cases cited in the opinion.)

The petitioner quotes from the opinion in the case of *Moore v. Potter,* 155 N. Y. 481, as follows:

"It is well established by the decisions of this court that a vendor of personal property, when the vendee has declined to take the property and

pay for it, ordinarily has the choice of any of three methods to indemnify himself against loss: (1) He may store or retain the property for the vendee and sue him for the entire purchase price; (2) he may sell the property and recover the difference between the contract price and the price obtained upon a resale; or (3) he may keep the property as his own, and recover the difference between the market value at the time and place of delivery and the contract price." (p. 486.)

The petitioner then says there seems to be some discrepancy between the three remedies stated by this court and those stated by the New York court. In what the discrepancy consists the petitioner does not indicate. It is this: First, the rules are stated in different order; second, the extent to which the rules are elaborated is different; and third, different modes of expressing identical rules are employed. The second and third observations apply to the statement of principle which the petitioner quotes from 24 Ruling Case Law, 108.

All the authorities which the petitioner cites have been discussed, and no sufficient reason for disturbing the former opinion having been offered, the petition for rehearing is denied.