No. 23,798.

HOWARD E. HUSELTON, *Appellee*, v. C. FROST LIGGETT et al., *Appel-
lants* (GRIGGS OPERATING COMPANY, a Common Law Trust, et al.,
*Appellees*).

SYLLABUS BY THE COURT.

1. ACTION TO QUIET TITLE—*By Assignee of Oil and Gas Lease.* · The facts and
findings show that the provision in the contract involved herein that a
defect in the title of the gas and oil lease assigned should render such con-
tract void does not preclude the plaintiff from maintaining this action to
quiet his title.

2. SAME—*Title Not Defective.* Held, that the title transferred was not de-
fective.

3. SAME—*Power of Attorney Withheld from Record.* The power of attorney
held by the defendant Liggett authorized him to pass the title of certain
other defendants, although withheld from record.

4. SAME—*Assignments of Lease Delivered.* The facts and findings show that
the assignments of the lease were delivered.

5. SAME—*Consideration for Assignments of Lease—Delay.* The delay of the
plaintiff in turning over certain shares of stock in consideration for the as-
signments of the lease was the fault of the defendant Liggett in not record-
ing the power of attorney.

6. SAME—*Tender of Shares of Stock in Consideration for Assignment.* The
facts and findings show a sufficient tender of the shares of stock, the agreed
consideration for the assignment of the lease.

7. SAME—*Possession by Plaintiff.* The facts and findings show a sufficient
possession to enable the plaintiff to maintain the action.

8. SAME—*Effect of Not Recording Power of Attorney.* Section 2073, General
Statutes of 1915, requiring a power of attorney to be recorded before action
thereunder does not avoid a conveyance made pursuant to such power
without recording the latter.

9. SAME—*Pleadings—Record—Judgment.* The pleadings and record held to
justify the inclusion of all the defendants in the judgment rendered.

Apeal from Butler district court; ALLISON T. AYRES, judge. Opinion filed
December 10, 1921. Affirmed.

*Charles H. Apt, Frederick G. Apt,* both of Iola, *C. L. Harris, A. L. L.
Hamilton, J. B. McKay, B. R. Leydig, K. M. Geddes, E. W. Grant, George J.
Benson,* and *T. A. Kramer,* all of El Dorado, for the appellants.

*R. L. Holmes, Charles G. Yankey, W. E. Holmes, D. W. Eaton,* all of
Wichita, and *Henry S. Conrad,* of Kansas City, Mo., for appellee Huselton;
*A. F. Williams,* of El Dorado, for appellee Griggs Operating Company.

The opinion of the court was delivered by

WEST, J.: In his third amended petition the plaintiff alleged among other things that he was the owner of an oil and gas lease, dated December 28, 1917, executed by Liggett and wife to the defendant C. Frost Liggett, to certain land, and that he was the owner of all the oil and gas rights covered by such lease; that he had the right to enter upon the property to prospect and develop, and was in actual possession under and by virtue of the lease; that he based his ownership on a contract between himself and C. Frost Liggett and M. M. Fontaine dated June 26, 1918, under which C. Frost Liggett executed and delivered to him two assignments of such oil and gas lease and the oil and gas rights so far as they cover the land involved herein; and he prayed that his title be quieted against all the defendants. The lease from Liggett to Huselton of July 17, 1918, recites that the lessor—

"Has granted, demised, leased and let and by these presents does grant, demise, lease and let unto the said lessee, for the sole and only purpose of mining and operating for oil and gas, and laying pipe lines and building tanks, powers, stations and structures thereon to produce, save and take care of said products, all that certain tract of land . . . described as follows, to wit:" [describing the land].

The contract of June 26, 1918, recites that in consideration of $8,000 in stock, par value, of a certain oil and gas company, to be delivered as hereinafter provided, "the first parties hereby agree to transfer, assign and set over unto the second party, or his assigns, in proper legal form all of the oil and gas rights to the Northwest Quarter (N. W. ¼) of the Northwest Quarter (N. W. ¼) . . ." etc., subject to one-eighth royalty to the owner of the land. "The said assignment by the first parties, and this contract, shall be subject in all respects to examination and delivery of good legal title. In the event the title to said oil and gas lease be found defective, then this contract shall be null and void."

The assignment, dated July 7, 1918, signed by C. Frost Liggett, recited that the party of the first part—

"Hereby grants . . . all the oil, gas and minerals in and under the following described premises, together with all rights conferred upon said party of the first part, as contained in a certain oil, gas and mineral lease, executed on December 28, 1917, by Frank S. Liggett and Eva Liggett in favor of said C. Frost Liggett," etc.

It was further provided that a certain agreement made and entered into by C. Frost Liggett and M. M. Fontaine, parties of the first part, and Howard E. Huselton, party of the second part, dated June 26, 1918, "shall become and be a part of the agreement and stipulation of this contract and lease." C. Frost Liggett, in his answer, alleged that he with M. M. Fontaine, George W. Wood, Don C. Lamson and John F. Rowe, being on June 26, 1918, sole and only owners of the oil and gas lease and all rights thereunder, he and his codefendant, M. M. Fontaine, executed the agreement of that date; and—

"That acting under said agreement this defendant prepared two certain papers, one in the form of an oil and gas lease and one in the form of an assignment of the oil and gas rights . . . with an abstract of title to said land showing the title to said oil and gas rights in this defendant, C. Frost Liggett."

Further, it was alleged that the lease and assignment were given by the defendant, Fontaine, to the plaintiff for his examination and that he took them under pretense of examining them and then refused to give them up and afterwards made objection to them and refused to accept them and refused to accept the title as given in the abstract and advised this defendant of such refusal, notwithstanding which he afterwards had the lease and assignment recorded; that he and Fontaine demanded a return of the papers, which demand had been refused; and he averred that they had never been delivered to plaintiff and that he had not paid the consideration for them; and that on August 19, 1918, he notified the plaintiff that unless he complied with the terms of the agreement the defendant would not be bound by the terms of the agreement and it would terminate and be null and void. Lamson's answer set up a ⅟₁₆ interest in the lease and the guardian for Wood made a similar answer.

The court, the jury being waived, made findings of fact to the effect, among other things, that Liggett and Fontaine made the contract with Huselton, and Frank S. Liggett and wife made the lease to C. Frost Liggett; that Liggett made the assignment to George W. Wood for a one-sixteenth interest and to Fontaine for thirteen thirty-seconds, to Lamson for one-sixteenth, and to Rowe for one-sixteenth; that the record title to the oil and gas lease was by the defendants, Fontaine, Wood, Lamson and Rowe, permitted to remain in C. Frost Liggett until after the making and execution

of the assignment from him to the plaintiff, and that from this fact C. Frost Liggett claimed to be within his rights in conveying the title under his own name, and that Fontaine, Wood, Lamson and Rowe did this for the purpose of permitting Liggett to quiet the title in his own name in such a manner as might seem most advantageous to him; that on July 17, 1918, for the purpose of carrying out the written contract of June 26, 1918, Liggett executed a lease and assignment intended by him to be an assignment to Huselton of all the rights, title and interest in and to the oil and gas lease made by Liggett and wife, so far as such lease covering the tract involved herein is concerned; that these instruments were sent to Fontaine with the abstract of title covering the oil and gas lease for the purpose of having such abstract and whichever instruments Huselton might select delivered to him, and upon delivery by him of the stock which was the consideration for the assignment; that on July 19, 1918, Fontaine delivered to Huselton the abstract and instruments with the understanding that he was to be permitted to decide which of the assignments he would accept, and that at no time thereafter did Liggett or Fontaine request the return of the instruments until August 19, 1918, when Liggett asked that they be returned for the reason that Huselton was refusing to carry out his part of the contract, but thereafter at all times Liggett contended with Huselton that he, Liggett, had by such instruments transferred and assigned to Huselton the entire leasehold interest in and to the forty-acre tract; that after the delivery of these assignments and abstract Huselton had the latter examined by his attorney, and prepared a form of assignment intended to take the place of those already referred to, and forwarded to Liggett for execution, and upon its receipt Liggett executed and sent it to Fontaine and telegraphed her not to execute and deliver it to the plaintiff, and it was not delivered; that at all times after July 19, 1918, Liggett contended that he had by assignment transferred and assigned to the plaintiff the entire lease interest in and to the forty-acre tract; that on or about July 23, 1918, the plaintiff was advised that other persons besides himself and Liggett were interested in the lease and therefore demanded from Liggett the assignments of such persons, and on or about July 27, 1918, the plaintiff and Fontaine met at the office of W. S. McClintock for the purpose of preparing a form of assignment satisfactory to the plaintiff, whereupon one was prepared by McClintock to be

executed by Liggett, Fontaine, Wood, Lamson and Rowe, and was sent by Liggett to Lamson for execution by himself and Lamson, and Rowe who lived in Colorado, to be forwarded to Fontaine for execution by her and forwarded for execution by Wood, but Liggett refused to execute or have it executed by Lamson and Rowe; that on February 6, 1918, Wood, Lamson and Rowe gave C. Frost Liggett their power of attorney authorizing him to convey their rights in the lease, but it was not recorded until August 25, 1920; that at no time after June 26, 1918, did Liggett and Fontaine ever advise the plaintiff of the existence of the power of attorney, and that on August 5, 1918, the plaintiff accepted the assignment of July 17, 1918, and placed it on record, and that the plaintiff was at all times able and willing to turn over to Liggett the stock called for in his contract; and that he took actual possession of the property under the instruments of assignments made him by going upon the land and leaving a load of lumber suitable for use in drilling operations, and on August 14, 1920, he was advised by the defendant, Griggs, that Liggett had a power of attorney from Rowe, Lamson and Wood, whereupon he made a tender to Liggett of the stock, which tender was refused. The tender was made again upon trial and preserved by depositing with the clerk of the court.

"Eighteenth: Neither the plaintiff nor his attorneys, . . . ever raised any objections to the legal title to the leasehold interest covering said forty acres except that the same was covered by an old mineral lease which mineral lease was canceled by the judgment of this court on the 11th day of October, 1918, and that the plaintiff never made any objection to carrying out the contract of June 26, 1918, on account of said old mineral lease. The title of said lease is good."

The court further found that the only objection ever made by the plaintiff to carrying out the contract was because it did not appear that the entire interest in the lease was being transferred by the defendants to the plaintiff, the plaintiff having been advised by Fontaine that others were interested in the lease and Liggett refused to disclose by what authority he acted for such other persons.

As conclusions of law the court found that the contract of Liggett and Fontaine bound the defendants to convey to the plaintiff the full title; that until the plaintiff was advised of Liggett's authority to act for Rowe, Lamson and Wood, he had a right to withhold a delivery of the stock named as a consideration for the lease; that the assignments of July 17, 1918, conveyed to the plaintiff full title; and that the title was therefore good in the plaintiff.

Counsel contend first that because of the provision that the contract should be null and void if the title were found defective, the action must fail. On this question the court not only found that the plaintiff never made any objection to carrying out the contract, but that the title was good. There is no doubt that such a contract might lawfully be made, but we fail to see how any defect in the title can be claimed. None was asserted by the plaintiff—he was only waiting for a full conveyance—or a conveyance of the full title by the owner who failed to disclose his power of attorney. The matter of an old lease mentioned by the court in its findings as having been canceled by a judgment of October 18, 1918, certainly did not stand in the way after that date. But even counsel say that the plaintiff is not prosecuting this action to make his title good, but takes the position that it is already good. True, he does not seek specific performance, but to guard his title against any claims the defendants may assert. It is argued that Liggett did not have a good title and did not stand in the shoes of Wood, Rowe and Lamson. But until that power was revoked he certainly could convey good title and to have done so would have been in accordance with the power thus conferred. But it is suggested that the title need not have failed—it was sufficient if it were defective. It seems a little extraordinary for the vendor to insist so strenuously in attempting to disparage his own title. It is usually the purchaser who picks the flaws and not the seller. Failure to record the power of attorney did not lessen Liggett's title thereunder and by keeping it off the record he could not consistently claim a defect in his own title or blame his vendee for withholding the consideration until he gave him a paper title as good as his actual title.

The court found that a delivery of the assignments was made and the evidence well sustains the finding.

Complaint is made that the plaintiff unduly delayed payment of the consideration. But as soon as he learned of the power of attorney the plaintiff tendered the consideration and the tender was refused. Doubtless, the consideration would have been promptly forthcoming if Liggett had recorded the power of attorney promptly. At least, the record shows that the plaintiff repeatedly requested a closing of the deal, which requests were unheeded. The 19th finding was to the effect that the only objection ever made by the plaintiff to carrying out the transaction was that it did not appear that the defendants were transferring the entire interest in the lease, "Liggett

refusing to disclose by what authority he acted for such other persons." If Liggett, as his counsel now argue, wanted the Crystal Oil stock while it was valuable he could easily have obtained it by the mere recording of the power of attorney, and after refusing to do so he cannot blame Huselton if the stock depreciated.

Some point is sought to be made because there was not a technical, literal tender of this stock. But the courts have come to treat such matters very much as the parties to a contract do, and when a tender is offered and refused or made in a way not quite satisfactory to the ancient doctrinaires, it will answer requirements of the law when it has already answered the purpose of the parties, and we find nothing of substance in the record on which to base any defense in relation to the matter of tender. (See *Chinn v. Bretches*, 42 Kan. 316, 22 Pac. 426; *C. K. & W. Rld. Co. v. Comm'rs of Chase Co.*, 49 Kan. 399, 413, 30 Pac. 456; *Piazzek v. Harman*, 79 Kan. 855, 98 Pac. 711; *Echternack·v. Moncrief*, 94 Kan. 754, 147 Pac. 860; 26 R. C. L. 622-625.)

It is disputed that the plaintiff was in possession as alleged by him. The only possession requisite under the terms of the lease was the freedom to go upon the land to prospect for and handle the oil found thereunder. The plaintiff testified that on August 14, 1920, he purchased some lumber which he caused to be taken to the land.

"I rode on the truck myself and saw it delivered myself, and wrote my name on the lumber which I left. The lumber was suitable for use in the construction of any part of an oil well, derrick, or other use in the development of the lease."

C. Frost Liggett testified that on the 20th day of August, 1920, he was on the land, posted notices at various places on the tract and "failed to find a stick, board or anything of any character in the way of lumber." The court found that "the plaintiff took actual possession . . . by going upon the land, and leaving there, a load of lumber which was suitable for use in drilling operations," and under the evidence already stated, which seems to have been all on that question, it is beyond our power to overturn the finding of the court. Having recorded his assignment, and having done as found by the court, we deem his allegation of possession sufficiently supported to enable the plaintiff to maintain the action.

Because Rowe, Lamson and Wood did not execute the assignment it is urged that the plaintiff is not entitled to a judgment against them. It is argued that the principles of agency still ex-

isted between these defendants and Liggett, and that had he completed the title in the plaintiff he would have been an unfaithful agent. We are unable to discover any mystery in the situation disclosed by the record. Liggett contracted to assign the lease to Huselton. He held the power of attorney from these three defendants authorizing him to convey their interests, and when he contracted to convey the full title it was his duty to do so and any question arising between him and the principals in the power of attorney, if any, should have been settled between him and them and not between him and the plaintiff.

Section 2073, General Statutes of 1915, requiring a power of attorney to be recorded before the conveyance authorized thereby is executed, is cited as a reason for absolving the makers thereof. There is nothing in the statute and nothing in the law which has been called to our attention that would in any way avoid this power of attorney by the action of Liggett thereunder on account of the mere failure to record it. Of course, as counsel suggest, in order to be recorded it must be executed and acknowledged, but no reason appears why, having executed it, the makers are not bound by it, whether it is recorded or not. Corpus Juris says that in the absence of a statute a power of attorney need not be acknowledged or recorded, but that some states require and others permit them to be recorded.

"As the purpose of requiring acknowledgment and record is thereby to give notice to third persons, failure to record the power of attorney, even when recording is required by law, will not invalidate the agent's acts thereunder as between the parties to such acts but only as to creditors and subsequent purchasers without notice, unless the statute makes recording a prerequisite to authority to act, or provides that unrecorded instruments shall be absolutely void." (2 C. J. 456, 457.)

"But in the absence of express provisions of statute the validity of letters of attorney is not affected by a neglect to have the instrument recorded." (21 R. C. L. 878.)

The intimation that the principals in the power of attorney are not bound because not named in the instruments relied on by the plaintiff is not deemed to require discussion.

It is further said that Liggett did not attempt to act under the power of attorney even if he had authority to do so, but it is admitted that he took the position that the entire record title was in himself. The court expressly found that Wood, Lamson and

Rowe refrained from disclosing to the plaintiff the fact that Liggett had their power of attorney, and—

"The court finds that said Fontaine, Wood, Lamson, and Rowe did this for the purpose of permitting the said Liggett to deal with the said oil and gas lease in his own name, and assign, transfer and convey the same in such manner as to him might seem most advantageous."

The evidence warranted this finding, and in view thereof it hardly lies in the mouths of these defendants now to question Liggett's power to act so as to pass the full title.

Finally, the argument is advanced that the pleadings were not sufficient to enable the plaintiff to prevail against Wood or his executor because he filed no pleadings. Wood was made a party and answered by his guardian, and service was had against his executor. Stratford as administrator joined in the demurrer to the plaintiff's evidence. The cause was tried through on the pleadings, and these defendants excepted to the findings and joined in the motion for a new trial after having moved to set aside the findings. They made no objection to testimony under the third amended petition. "The defendants requested the court to make special findings of fact and conclusions of law," and this includes these defendants. There was no demurrer to the plaintiff's pleadings, and in view of all these facts it is too late now to question their sufficiency.

The cause was carefully tried by an able court who had before it the witnesses who were seen and heard, and while the defendants' side has been pressed with the vigor and ability characteristic of their counsel, we are unable to find any error in the record.

The judgment is therefore affirmed.