No. 25,499.

J. R. ZECHA, *Appellee,* v. CITIZENS STATE BANK OF ELLINWOOD, *Appellant.*

### SYLLABUS BY THE COURT.

1. CONTRACT—*Sale of Oil Stock—Action for Rescission—Ground for Rescission Stated—Proof Required.* One who had been negotiating for the purchase of stock in an oil company drew a check in favor of the vendor and left it with his bank to be exchanged therefor. Stock of the character indicated was left with the bank and by it delivered to the purchaser, the bank placing the amount of the check, which was not indorsed, to the credit of a third person who had sustained some relations with the vendor. After the lapse of about two years the purchaser brought action against the bank, alleging these facts and also that the person from whom he had contracted to buy the stock had agreed to refund the money in case he should become dissatisfied, and that the stock which he had received through the bank did not come from such person, so that he was deprived of this recourse. It is held that in order for the plaintiff to hold the bank for the amount of the check it was necessary he should prove that if the stock delivered

had been furnished by the person with whom he had contracted he would have had a right to recover his purchase money from him.

2. SAME—*Request for Rescission Should Be Made Within Reasonable Time.* A promise of a seller of oil stock to refund the price if the buyer shall request it carries an implication that the request must be made within a reasonable time, and it is competent for the triers of the facts to determine that fifteen months is an unreasonably long time.

3. SAME—*Amendment to Petition—Action Not Barred by Statute of Limitations.* In the situation stated in the first paragraph of this syllabus a petition alleging merely that the check was left with the bank with directions to deliver it to the payee and that its proceeds were diverted from him by the bank was sufficient to stop the running of the statute of limitation, and a subsequent amendment alleging the other facts, including the promise to refund, was an amplification of the original cause of action and not the statement of a new one.

4. SAME—*Not an Action for Relief on Ground of Fraud.* It is held that the action is not one for relief on the ground of fraud, and the two-year statute of limitation does not apply.

5. SAME—*Certain Evidence Considered.* It is held that upon a retrial precaution should be taken to prevent certain irrelevant evidence having a tendency to create prejudice against the defendant from reaching the jury.

6. SAME. Other assignments of error are held not to be well founded.

Appeal from Barton district court; CLYDE R. DOUGLASS, judge. Opinion filed December 6, 1924. Reversed.

*William Osmond, Elrick C. Cole,* and *T. B. Kelley,* all of Great Bend, for the appellant.

*R. C. Russell,* of Great Bend, for the appellee.

The opinion of the court was delivered by

MASON, J.: On September 28, 1919, J. R. Zecha, of Ellinwood, began negotiating for the purchase from Sherwood Noll, of Peabody, of stock in the Leeward Petroleum Corporation. Three days later he borrowed $2,000 from the Citizens State Bank, of Ellinwood, giving his note therefor, and signed a check for that amount, payable to Noll, which he left with the bank with directions to deliver it in exchange for the stock. The bank received from some source the designated amount of stock in the Leeward company. It delivered this to Zecha and credited the check to the account of E. A. Mabes, who had some relations with Noll in handling oil stock. The check was not indorsed by any one, and was returned to Zecha with his other paid checks at the end of the month. On February 20, 1922, Zecha sued the bank for the amount of the check, alleg-

ing that he had not discovered until November 26, 1921, that the check had not been paid to Noll. He recovered judgment for the amount of the check and interest, less $28 which he had received in 1921 as a dividend on the stock. The defendant appeals.

In the second amended petition, upon which the case was tried, the plaintiff alleged, by way of showing that the stock he had received was not what he had bargained for, and was worth less to him, that Noll had guaranteed its value and had agreed that if the plaintiff became dissatisfied with the purchase he would refund the price. The plaintiff gave this testimony:

"About the 28th of September, 1919, I went to Peabody and met Mr. Sherwood Noll; he drove us out to the oil field; Mr. Christian Arensdorf and Mr. George Kimpler were with us; we were out there most of the day. Mr. Noll drove us and pointed out different leases, and especially some of the leases of the Leeward Petroleum Corporation. Mr. Noll said that the Leeward company owned 1,500 to 1,800 acres in the heart of the Peabody and Elgin fields; he said: 'We have over a million dollars worth of property on top of the ground, and six wells, all pumping oil, and more coming in.' After showing us some leases, which he claimed that he and Mabes owned, he tried to sell me some of the stock; he said that he would try and let me in on this Leeward corporation; he said this is not a speculation, an investment, but it will take $2,000 to get in on it; he said, 'I personally guarantee this stock to be as represented, and make you some money, and at any time you want your money back from it after sixty or ninety days, I will give you back every cent of your money.' I did not buy any stock that day; just before I left the depot I said to Mr. Noll: 'In case I decide to accept this proposition, and am able to get the money, have you any of those shares for me?' He said: 'I am not sure, I have promised several shares to some friends of Mr. Mabes and the Citizens State Bank, where he is employed, and I am not sure whether I have any left or not.' He said: 'Where do you do business?' I said: 'At the Citizens State Bank.' He said: 'I will let some one know at the Citizens State Bank within two days if I have one of these shares left for you or not.' I returned to Ellinwood and later received a phone call at the bank; this was October 1, 1919; I saw Mr. Knipp first, and he said that Mabes wanted to speak to me; and I then talked to Mabes, and to Mr. Smith, the president of the bank, now dead, and Mr. Knipp, the cashier; Mabes said that he had received word from Mr. Noll that he had one of these certificates for me; he had only three left; one for Mr. Knipp, one for me and one for Chris Arensdorf; he wanted to know if I wished to accept the proposition; I said: 'No, I haven't the money.' He said: 'You needn't worry about the money, we have it ready for you here at the bank.' I finally borrowed the money at the bank. Mr. Smith, the president, and the cashier, were called in to make out the note in favor of the Citizens State Bank for $2,000, and I signed the note. I instructed Mr. Smith to write out a check for $2,000 to the order of Sherwood Noll, and I signed it, and left it

with the president, with instructions to see that Mr. Noll gets this check, or this money, and I received my stock from Mr. Noll; I do not feel sure whether the cashier was still present or not. About the middle of November, 1919, I received my stock. That morning I called at the bank and Mr. Knipp said: 'Your stock certificate has arrived.' He handed it to me in an open envelope. I said: 'How does it come that it comes in this kind of condition?' He said: 'Mr. Bill Howard came in from Peabody and Mr. Noll sent it by him.'"

In the foregoing testimony it appears to be assumed that Mabes was an employee of the bank at the time of the transaction referred to. The direct evidence on the subject however is that his connection with the bank ceased as early as the middle of September, 1919.

Noll testified that he had made no guaranty with respect to the stock, and no promise to return the money received for it, but that through the help of Mabes he had given the money back to a number of purchasers; that so far as he knew he had not received the proceeds of the $2,000 check; that Mabes assisted him in selling some of the Leeward stock to a number of his friends and neighbors at Ellinwood; that he had no book account of the transactions; that Mabes paid him $2,500 by a check dated October 3, 1919. To the question as to how Mabes transacted this business for him he said:

"Well, he would send the money for some of the stock, and occasionally his men out here would give him the money to send for this stock, and he would send it to me, and I would send the stock, which would first go to the Leeward office in Lockport and be transferred, and a new certificate issued. . . . I don't remember receiving any check from Mabes on the Peabody bank, or Florence bank, but I would not swear that I did not. When I received these stock certificates back from the Leeward Petroleum Company I couldn't say whether I mailed them direct to the parties or not, possibly to the Citizens Bank of Ellinwood, or to Mabes, I don't know, I don't recollect."

Mabes deposed that he was collecting agent for Noll; that Noll had him use his influence to persuade persons who came down to look over leases to purchase, collecting the money when a sale was made and sending it to Noll; that he turned the $2,000 in to Noll and told him to send the stock by mail, and presumed he did so. "I instructed Mr. Noll to have the certificate issued to Doctor Zecha; I don't know whether the certificate of stock had been issued to me and then transferred to Doctor Zecha or not, Mr. Noll had charge of all certificates." There was evidence that the stock issued to the plaintiff had originally stood in the name of Mabes.

The bank cashier, who credited Mabes with the amount of the

Zecha v. State Bank.

$2,000 check, testified that he did not remember whether or not the plaintiff told him to do so. He was unable to tell how it happened that he put it to the credit of Mabes without an indorsement. He said the stock that was delivered to the plaintiff was brought to the bank by W. A. Howard.

1. In the instructions the jury were told in substance that the plaintiff was entitled to a verdict for $2,000 and interest (less the amount of the dividend) unless the defendant had shown by a preponderance of the evidence either that the proceeds of the check were paid to Noll or that Mabes was the agent of Noll with authority to cash the check. The defendant complains of this feature of the charge. It is ordinarily true that a bank by paying a check to the wrong person incurs a liability for the amount to the drawer, because ordinarily his funds are depleted to that extent without any corresponding benefit. Here, however, the payment of the check was but one step in the carrying out by the bank at the request of the plaintiff of a deal he had arranged. His purpose in leaving the check with the bank was to provide means to pay for Leeward company stock to be delivered to the bank for him. By his own testimony his negotiations with Noll for the stock were left open until Noll should notify someone at the bank within two days. On the third day he was called to the bank and told that Mabes wanted to see him. Mabes told him he had word from Noll that he could have the stock and the deal for it was made, the bank obviously having knowledge that it had been consummated through the interposition of Mabes. It cannot be said as a matter of law that the bank was negligent in acting upon the supposition that the shares of stock delivered to it were the identical shares bargained for by the plaintiff, in which case it took no risk in paying the money to Mabes unless an objection should come from Noll. There is nothing to show intentional wrong on the part of the bank in the matter of the payment to Mabes, and the jury found specifically that it received no benefit from the sale of the stock. The plaintiff obtained just what he had bargained for, except that upon his theory it was stock that came from Mabes and not from Noll. In this situation the plaintiff is not entitled to recover more than the actual loss he sustained by reason of the bank's error in accepting and paying for stock furnished by Mabes instead of stock furnished by Noll. The plaintiff recognized this by pleading and attempting to prove that if the stock had come from Noll he would have had a valid claim against

Noll for the return of his money because of Noll's having promised to return it at any time the plaintiff should want it after sixty or ninety days. As witnesses the plaintiff asserted and Noll denied that such a promise had been made. The issue was a vital one, but the instruction under consideration allowed the jury to return the verdict they did even if they resolved it against the plaintiff. They found in response to questions submitted that Mabes was not the agent of Noll in September and October to collect for oil stock sold by Noll, that Mabes did not pay Noll for the stock purchased by the plaintiff, and that Noll did not sell the stock in controversy to the plaintiff; but they were not asked whether Noll had promised to return the money for stock purchased of him, and the general verdict implies no .finding in that respect, because under the charge the decision could be against the defendant without regard to that question. A new trial must therefore be ordered.

2. If Noll promised that he would, if the plaintiff so requested, return the money paid for the stock after sixty or ninety days, we think a limitation must be implied that the request should be made within a reasonable time, and that whether the time testified to by the plaintiff ("some time after the new year of 1921") was reasonable was a question for the jury. An instruction to that effect was asked by the defendant and refused.

3. The defendant asserts that the action was barred by the three-year statute of limitation. The first petition, filed February 20, 1922, or a little over two years and four months after the transaction complained of, merely set out that the plaintiff had written a check for $2,000 payable to Noll and left it with the bank to be delivered to him; that the proceeds did not reach Noll, but were wrongfully diverted by the bank. An amended petition, filed December 15, 1922, was substantially like that on which the case was tried, so far as concerns the statute of limitation. The defendant's position is that the allegations with regard to Noll's promise to refund the purchase price form an essential part of the cause of action and that the statute continued to run until they were inserted, more than three years after the accrual of the right to sue. We think the original petition, liberally construed, stated a cause of action against the bank for having paid a check to the wrong person, presumptively causing a loss of its amount to the drawee. The later petitions showing that the plaintiff had received stock for his money, but that it was not of the value of the stock contracted for because it

did not have Noll's promise of reimbursement behind it, we think may rightly be regarded as an amplification of the original cause of action rather than the setting out of a new one. (*Culp v. Steere,* 47 Kan. 746, 28 Pac. 987.)

4. The defendant also argues that if the action is one for relief on the ground of fraud it is barred by the two-year statute, and that the theory of a delay in discovery cannot save it, because the fact of the check not being indorsed was a sufficient notice to put the plaintiff on inquiry. The action, however, is not one for fraud, and we do not see that the absence of the payee's indorsement was notice of payment to the wrong person.

5. The plaintiff, over objection, testified to a conversation about this action in which the bank president, among other things, said to him: "Well, we may owe you this money, but we are going to make it cost you all you will ever get out of it to get it. The idea of a poor man trying to sue a bank. We will drag it out and post-pone it and delay it until it cost you all you've got now." A motion to strike out was overruled, but the court in its instructions told the jury they had no right to consider any statements made in the conversation except such as tended to show an admission of liability on the part of the bank. The defendant complains of the admission of the evidence and of the refusal to strike it out. The plaintiff argues that it was impossible to segregate the objectionable portions. A direction not to consider irrelevant evidence tending to arouse prejudice against a party is not a complete antidote to its reception, and at another trial precaution should be taken against its reaching the jury.

6. A point is sought to be made of the plaintiff's failure to tender the stock and the dividend before bringing the action. An offer to return the stock was made in the amended petition, and the course of the trial indicates that a tender would have been ineffective.

The defendant asserts that three of the special findings had no support in the evidence. The questions involved appear to relate to the credibility of witnesses.

The judgment is reversed and a new trial directed.