No. 29,740.

RAYMOND F. RICE et al., *Appellees*, v. JOHN L. KILWORTH (et al.), *Appellant.*

(295 Pac. 700.)

Opinion filed February 7, 1931.

*C. A. Smart* and *J. B. Wilson*, both of Lawrence, for the appellant.

*Walter G. Thiele* and *Raymond F. Rice*, both of Lawrence, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This is an action to recover upon certain promissory notes. The defendant, appellant herein, set up as an offset a contract on the part of the plaintiff to buy back certain bonds sold him by the plaintiff. Plaintiff pleaded, amongst other things, that recovery on this contract was barred by laches on the part of the defendant. Judgment was for plaintiff for the amount of the notes, and defendant appeals.

The facts are that in the fall of 1915 John L. Kilworth purchased from the Watkins National Bank some bonds of Oklahoma City, Okla., the deal being consummated through one C. H. Tucker, who at that time was cashier of the Watkins National Bank, and later became its president. The purchase of the bonds was made at the conclusion of a conversation between Kilworth and Tucker, at which time Tucker prepared and signed as cashier of the bank the following memorandum:

"Watkins National Bank, Lawrence, Kansas, October 29-15. I have this day sold John L. Kilworth Oklahoma City bonds 144-150 inclusive, $500 each,

and bonds Nos. 36-50-57-64-43 for $178.49 and bonds 41 for $334.13 and when resold John L. Kilworth is entitled to interest at 6 per cent from October 1, 1915.                                                  C. H. Tucker, Cashier."

There was some conversation following the entering into of this writing, which was to the effect that if Kilworth desired the bank to repurchase or take from him the bonds in question it would do so and pay him what he had paid for the bonds under what Tucker characterized as a gentleman's agreement. When the bonds were paid, Kilworth was to receive 6 per cent and the bank 4 per cent of the 10 per cent they were drawing. At the time the purchase of these bonds was made they were past due and there was some conversation between Kilworth and Tucker as to whether or not these bonds were a good investment.

About October 25, 1920, certain of the bonds were paid by the city, and Kilworth was called upon by the bank to surrender them for payment and did so, receiving therefor $1,467.43, all of which was principal on the bonds, except $240.85, which was interest. The bank did not receive any interest on these bonds at this time or any other time.

Some time in October, 1928, the stockholders of the Watkins National Bank of Lawrence desired to liquidate and entered into a contract with the Lawrence National Bank, of the same place, for the sale of certain of its assets to the Lawrence National Bank, and at the same time that these assets were sold to it a liquidating committee was appointed for the purpose of collecting the assets of the Watkins National Bank and paying the proceeds thereof over to the Lawrence National Bank. Some time prior to the commencing of this action John L. Kilworth had made, executed and delivered to the Watkins National Bank the notes sued upon in the five causes of action set out in plaintiff's petition, and those notes were part of the assets of that bank at the time the liquidation was decided upon. Kilworth did not deny liability upon these notes, and the aggregate amount due on them was $7,769, with interest at the rate of 6 per cent per annum.

In November, 1928, the Watkins National Bank notified Kilworth that his note for $2,610, which was one of the notes sued upon in this case, would be due November 9, 1928. Whereupon Kilworth advised the bank that he had the Oklahoma City bonds, which he afterwards set up as an offset against the claim of the bank on his note; that instead of renewing this note he desired that the bank give

him credit upon the note for the amount of these bonds, which was the first time the bank had learned that Mr. Kilworth claimed any liability on the part of the bank to him on account of these bonds outside of the conversation that had been had with Mr. Tucker, which occurred thirteen years prior to the writing of the letter.

When suit was brought to collect upon the notes Mr. Kilworth set up the contract above alluded to and claimed that he was entitled to offset the money that he paid for these bonds against the amount due upon his notes.

At various times between the entering into of the contract for the purchase of the bonds and the time when Mr. Kilworth asked the bank to make good this repurchase agreement he had been wholly out of debt to the bank and on many occasions his indebtedness had amounted to less than the face of the bonds, and on many occasions it had amounted to more. On one occasion, in response to a letter from the bank asking for a property statement, he had written as follows:

"Pursuant to your interview *in re* my paper: I own, clear of encumbrance, real estate in Douglas county, Kansas, assessed at $79,345 aside from property owned in other counties and other states.

"I have never executed a mortgage in my life, paying for all property I have purchased, in cash or other clear property.

"I have borrowed in the past forty years from your bank, and none other, money running into hundreds of thousands of dollars, never letting my notes run overdue.

"My account is never carried in the red.

"No property carried in my wife's name.

"Now should your bank inspector not be satisfied with above statement, I will be pleased to take up my paper any day it pleases you."

This suit was brought by a liquidating committee of the Watkins National Bank, composed of Raymond F. Rice, Walter G. Theile and Dick Williams, to whom the notes in question, together with other notes, had been delivered. Some question was raised about the right of this liquidating committee to maintain the action upon these notes, and the Watkins National Bank was made a party to the suit so that any judgment that was had in the case would be binding upon this bank and it would be entitled to the benefits of any judgment contained therein. The question in the case is as to whether or not defendant Kilworth is guilty of such laches as would bar his right to recover on the contract for the repurchase of these bonds on account of having waited thirteen years after the contract

was first entered into before demanding that the bank make good on this contract, and seven years from the date of the payment by the city of Oklahoma City of part of the bond. The court made findings of fact, numbers 13 and 14, as follows:

"13. About thirteen years elapsed between the time when Kilworth purchased the Oklahoma City bonds and when he claimed credit therefor on his notes and more than seven years intervened between the payment of a part of the bonds and the demand for credit for the balance of the bonds held by him occurred.

"14. Demand for credit on account of the bonds was not made by Kilworth within a reasonable time after the date of the transaction."

The conclusions of law are as follows:

"3. The defendant, John L. Kilworth, was bound to exercise whatever options or rights he had under the agreements mentioned in the conclusions of facts and in the two foregoing conclusions of law within a reasonable time after the entering into of the said agreements.

"4. The query as to what constitutes a reasonable time within which to exercise the privileges accorded under the agreements mentioned is a question of fact to be determined from the testimony unless the facts are such that it should be determined therefrom as a matter of law.

"5. The facts relative to the situation surrounding the transaction about the Oklahoma City bonds are such that it must be determined as a matter of law that John L. Kilworth did not exercise whatever rights he had thereunder within a reasonable time."

Appellant argues that the liquidating committee of the Watkins National Bank did not have such an interest in the notes as to entitle it to maintain the action, and cites cases bearing upon the right of an agent to maintain an action for the benefit of his principal.

R. S. 60-403 provides:

"That an executor, administrator, guardian, trustee of an express trust . . . may bring an action without joining with him the person for whose benefit it is prosecuted."

It appears from the record in this case that this liquidating committee was trustee of an express trust and as such had a right to maintain this suit. The argument is of no avail, moreover, to the appellant here on account of the fact that after the right of the liquidating committee to maintain this action was questioned the Watkins National Bank was made a party to the action and is in the case for all purposes the same as if it had brought the suit in the first place.

These notes had first been indorsed to bearer by the Watkins National Bank, later to the Watkins National Bank by the Lawrence

National Bank. The court in *Green v. McAuley*, 70 Kan. 601, 79 Pac. 133, laid down the correct rule when it said:

"This suggests what we conceive to be the true rule of general, if not of universal, application, that so far as affects the question of the right of plaintiff to maintain the action the only inquiry open to the defendant is whether the plaintiff has such title to the note that a payment made to him would be a complete protection to defendant from any further liability." (p. 607.)

It cannot be said under the circumstances in this case, where the bank was made a party and filed pleadings and did all other things necessary to subject itself to the jurisdiction of the court, that a judgment against it and in favor of defendant would not be binding upon it.

Appellant admits his liability on the notes. The appellee admits that the writing alleged to have been entered into with reference to the bonds was actually entered into. It is admitted that thirteen years lapsed between the buying of the bonds and the decision on the part of Mr. Kilworth to sell them back to the bank, and about seven years between that and the payment of part of the bonds by the city.

The question of law is, Did Kilworth wait too long before exercising his option? There was no time specified in this contract within which it should be performed. There are many cases which hold that the seller of corporate stock may agree to repurchase it at a specified price at the option of the buyer, and when the agreement to repurchase is an absolute one the purchaser's reason for wanting to return the stock is immaterial. Time is of the essence of such contracts, and the option to return the stock and receive back the price must be exercised within the time, if any, fixed by the contract, and an option to rescind at any time does not mean at any time without limit, but the right must be exercised within a reasonable time. (See 6 Fletcher Cyclopedia Corporations, § 3891; see, also, *Zecha v. State Bank*, 117 Kan. 287, 230 Pac. 1058.)

It is said in 6 R. C. L., on page 896:

"No such distinction is made in the later cases, which lay down the rule that a reasonable time for performance is implied in the contract, which expresses no time for performance."

In 35 Cyc. 154 the rule is laid down—

"Where there is an option in the contract to rescind, if the time within which the option can be exercised is prescribed such conditions must be complied with, and a failure to comply therewith terminates the option and the

sale becomes absolute. In any event the option must be exercised within a reasonable time."

The appellant takes the position that the mere passage of time does not entitle the party to the defense of laches; that it is equitable in its nature, and quotes *City of Hutchinson v. Hutchinson,* 92 Kan. 518, 141 Pac. 589, as follows:

"The doctrine of laches is equitable in character, and mere lapse of time is not a bar to relief when the rights of the parties to the suit have not been prejudicially affected by the delay, the rights of innocent third persons will not be prejudicially affected, and nothing has occurred to create an equitable estoppel against the moving party or to create an equity in favor of his adversary." (Syl. ¶ 1.)

There are other cases in Kansas cited by appellant in support of this rule, and we think there can be no doubt that it is correct. We must, then, examine the case in question to see whether or not there is anything involved besides the mere passage of time. The record shows that the statute of limitations as to the bonds had had ample time to run in Oklahoma at least twice since the original transaction, and at least once since the date of the payment of part of the bond. It shows there has been an almost entire change in the personnel at the bank. It shows that the memory of Mr. Tucker, who had acted for the bank in making the contract, had become very faulty with reference to the details of the transaction and actual contract that was made. At least three times during the thirteen years Kilworth had been entirely out of debt to the bank and many times he had owed the bank less than the bonds amounted to. On one occasion, when asked for a property statement by Mr. Tucker, he had made a strong representation as to his worth, his general financial condition, had refused to give a detailed property statement and had expressed a willingness to take up his indebtedness to the bank any time it was desired, but had not mentioned the bonds which he owned at that time and which he later said he expected the bank to buy, even though they were worthless.

Taking all these things into consideration, we conclude that there were sufficient other elements besides the passage of time, which if taken together with the lapse of time, constitute a defense available to the Watkins National Bank against the appellant Kilworth upon the contract of October, 1915, to buy back the Oklahoma City bonds.

The appellant urges that even should we believe as just stated,

then we should not give judgment for the bank on account of the rule as stated in 15 Am. St. Rep. (p. 394, headnote.)

"One having the privilege of returning property to a person of whom he. purchased it and of thereupon receiving back the purchase price, is not guilty of laches in delaying its return when he was advised by such person not to make such return and that the property was good and would ultimately advance in the market." (*Johnston v. Trask et al.*, 116 N. Y. 136; 10 R. C. L. 404.)

We examined that case and find the facts upon which it was based were that the managing partner of the firm, who was pleading laches, had on several occasions advised the plaintiff not to part with the bonds that he had bought and had assured him that they were good and would ultimately advance in value. In the instant case there is a total lack of any evidence that Mr. Tucker made any statements of that kind to Mr. Kilworth. On the other hand, Mr. Kilworth bought these bonds two years after they were due knowing that there was doubt about their ever being paid, and he does not say in his testimony that Mr. Tucker induced him to buy the bonds through misrepresentation or ever said anything to him to induce him not to offer them back to the bank. In fact, Kilworth's own statement is that his sole reason for not offering them back to the bank sooner was that he did not wish to embarrass it.

It is, therefore, the opinion of this court that the judgment of the court below was correct in finding that the defendant was guilty of laches in not tendering back the bonds within a reasonable length of time, and the judgment is affirmed.