No. 31,254

J. T. MARSH, *Appellee*, v. THE BROWN-CRUMMER INVESTMENT COMPANY, *Appellant*.

(23 P. 2d 465.)

124

Opinion filed July 8, 1933.

*Thomas B. Elcock* and *James G. Martin,* both of Wichita, for the appellant.
*A. M. Ebright* and *P. K. Smith,* both of Wichita, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This is an appeal from the lower court's rulings on a motion to strike and on a demurrer, both directed against plaintiff's amended petition.

The petition contained five causes of action, each being on an oral contract to repurchase securities sold by the defendant to plaintiff on the following dates: October 10, 1925, October 11, 1927, March 5, 1928, March 30, 1928, and May 31, 1928. The first cause of action charges that on October 10, 1925, plaintiff entered into an oral contract with defendant company for the purchase from time to time of certain bonds and securities with the distinct understanding and agreement that the defendant company would repurchase such bonds and securities so sold upon demand of plaintiff and return to the plaintiff the face value thereof "with a reasonable adjustment as to accrued interest thereon," and that plaintiff purchased eighteen certain drainage-district bonds of the total face value of $9,000, which sum plaintiff paid defendant; that thereafter and in August, 1930, plaintiff offered to return said bonds, and when said offer and tender were made and demand made that defendant return to plaintiff the $9,000 theretofore paid, defendant refused said offer and tender and refused to repurchase said bonds; that thereafter other offers, tenders and demands were made by plaintiff and refused by defendant. The sixth paragraph of the first cause of action alleges that when the oral agreement was made the defendant did not intend to perform and entered into said oral agreement with the fraudulent intent to deny the agreement and to refuse to carry out the same if it later proved to the advantage of the defendant to so do, and that plaintiff relied on said agreement and would not have purchased except for it, and that plaintiff entered into said agreement in good faith and defendant entered into it in bad faith. The second and succeeding causes of action each incorporate all statements and allegations of the first cause of action material to the stated cause of action and allege purchases of other bonds on the dates above noted, and each contains the following allegation:

"That on said date the said parties acknowledged, admitted and renewed the oral contract theretofore entered into on the 10th day of October, 1925, and each and all of the provisions of said oral contract of October 10, 1925, were again made and entered into by and between said parties."

The prayer is for the total face value of the bonds sold ($15,500)— "and accrued interest thereon unpaid up to August 1, 1930, with interest on said $15,500 plus accrued interest from August 1, 1930, at six per cent per annum, and the costs of this action."

A motion to separately state and number was directed against the amended petition. The journal entry denying the motion contains the following:

"And plaintiff's attorneys state to the court that plaintiff seeks .to recover for a breach of each of the sundry contracts pleaded in his five several causes of action, and does not seek rescission of said contracts or any of them."

Thereafter a motion to make definite and certain and to strike was filed, the material portion being to strike out the sixth paragraph of the first cause of action, above referred to, and all reference thereto elsewhere in the amended petition. It is clear from the amended petition, and made certain by the quoted journal entry, that plaintiff seeks to enforce the oral contract of repurchase and is not seeking relief on account of fraud, and that portion .of the amended petition included in the sixth paragraph of the first cause of action, and included by. reference in the other causes of action, setting up fraud on the part of the defendant, should have been stricken out.

While the demurrer contains eight grounds, the argument is confined to two elements: (a) that the contracts pleaded are so indefinite and uncertain as to be unenforceable, and (b) that the contracts pleaded, if sufficiently definite, had expired by their terms before the action was brought.

With reference to the contention that the claimed repurchase agreement is too indefinite and uncertain to be enforceable, it is contended that there is uncertainty as to time of performance, and that what is to be performed is uncertain in that the agreement to repurchase the bonds and return the face value "with a reasonable adjustment as to accrued interest thereon" is too indefinite to be performed. As to uncertainty of time of performance of contracts of this type, it has been held in many instances that if the contract does not specify the time within which the right to repurchase must

be exercised, it must be exercised within a reasonable time. (55 C. J. 592.) As this element is related to the contention that the contracts, if sufficiently definite, had expired by their terms before demand was made and action brought, it will not be separately discussed.

In so far as indefiniteness on account of the general provisions of the contract is concerned, it is urged by appellant that the contract as pleaded is not for any specific bonds, that there is a lack of subject matter on which to operate, and that the provision as to interest adjustment is vague, indefinite and uncertain, and, further, that the contract is entire and inseparable and, assuming that the subject matter was made certain by purchase of specific bonds, still, on account of the lack of certainty as to interest, the entire contract is uncertain and so indefinite that it cannot be enforced. Reliance by appellant is placed chiefly on *Brown-Crummer Investment Co. v. Arkansas City,* 125 Kan. 768, 266 Pac. 60; but in that case it was held that a contract uncertain in some of its terms may, by practical construction, be cured and made certain. If the original contract was uncertain, as soon as a purchase of bonds was made under it it became certain, at least so far as the subject matter is concerned.

In A. L. I., Restatement, Contracts § 32, it is said:

"An offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain."

And in section 370 it is further stated:

"Specific enforcement will not be decreed unless the terms of the contract are so expressed that the court can determine with reasonable certainty what is the duty of each party and the conditions under which performance is due."

In 58 C. J. 933 the rule is laid down as follows:

"A greater degree of certainty is required in a suit in equity for specific performance than in an action at law for damages; and as against assignee and representatives of the contracting parties, it is said that the requirement of certainty is more than ordinarily stringent. However, absolute certainty is not required; reasonable certainty is necessary and sufficient; where the main features of a contract are sufficiently definite and certain, uncertainty in a subsidiary part will not necessarily prevent specific performance; uncertainty in a portion of the contract which has been waived is not fatal; and if specific performance of a separable part is sought, uncertainty or indefiniteness in the part of the contract not sought to be enforced is no defense."

And the general subject is treated in 25 R. C. L. 218 *et seq.* and in

23 R. C. L. 1262. The maxim *"id certum est, quod certum reddi potest"* has been held applicable in many cases of the character of the one under consideration here. (23 R. C. L. 1262.)

In *Gunton v. Carroll,* 101 U. S. 426, the third headnote in 25 L. Ed. 985 reads:

"The principle is not inflexible, that the court will not specifically enforce the contract where the price is not fixed or is left to be fixed by arbitration."

And in the opinion it was said:

"So of the case before us. Carroll has all the benefit of the agreement, in releasing property from liens, in paying his debt by his claims on others, and in a long indulgence, and now, because he had died without appointing arbitrators, his heirs say this part of the agreement must fail." (p. 432.)

Another element to be considered is whether the contract of purchase was a single or entire contract, or whether it was separable. Could the plaintiff recover as to the principal and fail as to the interest? The general subject of whether interest is incident to or separable from the principal debt is treated in 15 R. C. L. 15, 33 C. J. 254, and in a note in Ann. Cas. 1912B 1333. The general rule seems to be that where the contract provides for the payment of interest, the payment of principal is no bar to an action to recover interest, but when interest is merely implied and allowed by way of damages, no separate action therefor will lie. In the case at bar the agreement specifically provided for interest, and, therefore, the return of the face value of the bonds and the adjustment of interest are separable. There is and can be no uncertainty as to the face value of the bonds, and, therefore, the contract to that extent is binding and enforceable, and it would be no defense to say that plaintiff could not recover because of failure to recover all he claimed, the failure being attributable to a separable item. Therefore our attention need be turned only to the provision as to interest. Suppose the contract had been to return the face of the bonds and adjust the interest, could there be much dispute about what the parties agreed to do? What great difference did it make that they agreed to *reasonably* adjust the interest? At the time the offer was made, very likely the specific rate of interest which the bonds would bear was not known, for the bonds themselves had not then been purchased. It might have been better to state the agreement as to interest in more definite and certain language, but it seems that the language as used can easily be interpreted to mean that if the bonds were turned back on other than an interest-paying date, the

original seller should repay to the original buyer the face value, plus the accrued but unpaid interest. The argument that this would permit accumulation of interest coupons long past due does not appeal to us, for this reason: It goes to the question of whether the buyer waited too long to enforce his contract of repurchase rather than to the definiteness and certainty of the contract. And viewed from the ordinary use of words, it cannot be said there was a failure to agree as to interest. It was the seller's proposition which the buyer accepted, and the buyer is entitled to a construction favorable, rather than unfavorable, to him. A reasonable adjustment means no more than a fair adjustment, and if the seller and buyer cannot agree on what is fair, the court will make the agreement for them. (13 C. J. 269, 270.) We are of the opinion that the contract was sufficiently certain both as to return of principal and interest.

We next consider the proposition that the contracts, even if sufficiently definite, have expired; or, stated another way, that plaintiff has waited too long to bring his action. Contracts of repurchase are generally held to be enforceable, and where no time is fixed by the contract when the option must be exercised, it is held it must be exercised within a reasonable time. The questions then arise, What is a reasonable time, and is the question one of law or of fact?

In *Echternach v. Moncrief*, 94 Kan. 754, 147 Pac. 860, the contract fixed the time of repurchase, but, owing to representations of the sellers, an action to enforce the contract was held to be in time, although delayed for over a year, the delay being occasioned by the solicitations of the seller that, if given time, he would perform.

In *Zecha v. State Bank*, 117 Kan. 287, 230 Pac. 1058, it was said that the promise of the seller to repurchase if the buyer shall so request, carries an implication that the request must be made within a reasonable time, and it is competent for the triers of the fact to determine that fifteen months is an unreasonably long time. A retrial was ordered for certain errors, and was here again in *Zecha v. Citizens State Bank*, 120 Kan. 139, 242 Pac. 120, and on the question of delay, a special question was submitted to the jury as to whether plaintiff used reasonable diligence in returning his money, to which an affirmative answer was returned, and, in commenting, this court said:

"Considering all the evidence pertaining to the matter, we regard plaintiff's

diligence a fair question to submit to the jury, and its answer as controlling." (p. 141.)

In *Rice v. Kilworth*, 132 Kan. 418, 295 Pac. 700, plaintiffs, as a liquidating committee, sued Kilworth on notes. Kilworth sought to offset an amount claimed to be due on a contract of plaintiffs' predecessor to repurchase certain bonds. The evidence showed a delay of thirteen years had elapsed from the date of the re-purchase agreement to the date of demand, and seven years from the date of a payment on the bonds to the date of demand, and it was held that, while lapse of time alone is not sufficient to base a defense of laches, under the circumstances of the case it was sufficient. In discussing the question of delay, it was said:

"The question of law is, Did Kilworth wait too long before exercising his option? There was no time specified in this contract within which it should be performed. There are many cases which hold that the seller of corporate stock may agree to repurchase it at a specified price at the option of the buyer, and when the agreement to repurchase is an absolute one the purchaser's reason for wanting to return the stock is immaterial. Time is of the essence of such contracts, and the option to return the stock and receive back the price must be exercised within the time, if any, fixed by the contract, and an option to rescind at any time does not mean at any time without limit, but the right must be exercised within a reasonable time. (See 6 Fletcher Cyclopedia Corporations, § 3891; see, also, *Zecha v. State Bank*, 117 Kan. 287, 230 Pac. 1058.)

"It is said in 6 R. C. L. on page 896:

" 'No such distinction is made in the later cases, which lay down the rule that a reasonable time for performance is implied in the contract, which expresses no time for performance.'

"In 35 Cyc. 154 the rule is laid down—

" 'Where there is an option in the contract to rescind, if the time within which the option can be exercised is prescribed such conditions must be complied with, and a failure to comply therewith terminates the option and the sale becomes absolute. In any event the option must be exercised within a reasonable time.' " (p. 422.)

It was said in *Paulson v. Weeks*, 80 Ore. 468, 157 Pac. 590, Ann. Cas. 1918D 741, that the words "any time" in agreements analogous to the one here, are almost universally construed to mean a reasonable time, and that ordinarily the question of what is a reasonable time must be submitted to the jury, but sometimes the court is enabled to say as a matter of law that a reasonable time has expired. And see, also, *Leadbetter v. Price*, 103 Ore. 222, 202 Pac. 104.

The question as to when an option must be exercised is treated in 55 C. J. 256, wherein it is said:

"Where a contract of sale containing an option to rescind prescribes the time within which it may be exercised, such condition must be complied with, and a failure to comply therewith terminates the option. According to some, but not other, authorities, a buyer who, under the contract, has an option to rescind until a specified time, may defer rescission until that time, notwithstanding he has acquired knowledge of facts entitling him to rescind at an earlier date. In any event the option must be exercised within a reasonable time. . . ."

With reference to bringing of an action is the following from 1 C. J. 977, 978:

"Notice by one party to another, as a condition precedent to an action by the former against the latter, is in some cases expressly required by statute, or by agreement, and in others will be implied from the nature or provisions of the contract or obligation in question. . . . When regulated by statute notice must be given in the manner, and within the time prescribed. In the absence of express provision it should be given within a reasonable time."

And on page 980 of the same work it is further said:

"When so regulated a demand must be made within the time prescribed by the statute, or agreement, but in the absence of express requirement, the rule is that the demand should be made within a reasonable time, according to the circumstances of the particular case."

From the above it may be set forth as a general rule that where the contract contains a right on the part of the buyer to return the article sold and receive back the agreed consideration, whether called a conditional sale, a sale with option to rescind, or what not, and the agreement makes no provision for time, the option or privilege must be exercised within a reasonable time, and that ordinarily the question is for the jury, although in some cases the situation is such that the court is enabled as a matter of law to say that a reasonable length of time has expired. Such a situation may arise where there is no dispute as to the facts.

As the case at bar now stands there is no dispute as to the facts, and so consideration will be given to the question of whether plaintiff's claim is barred as a matter of law.

In *West v. Bank*, 66 Kan. 524, 527, 72 Pac. 252, in dealing with a somewhat analogous situation, it was said:

"It is established law in this state that when some preliminary action is an essential prerequisite to the bringing of a suit, and such action rests with the claimant, he cannot defeat the operation of the statute of limitations by long

and unnecessary delay in taking the antecedent step; and the statute will begin to run within a reasonable time after the party could, by his own act, perfect his right, which reasonable time will not, in any event, extend beyond the statutory time fixed for bringing the suit. This doctrine has been stated and restated, illustrated and illuminated, applied and reapplied, until it has become a truism." (See cases cited.) (p. 527.)

This rule, however, must be limited in its general application to at least this extent: If defendant's conduct has induced plaintiff's delay, he cannot urge the delay, as it is occasioned by his own act. (*Echternach v. Moncrief*, 94 Kan. 754, 147 Pac. 860.) And by course of dealing between the parties, based upon sufficient consideration, the contract might be amended, amplified and changed and the time for performance extended.

Appellee argues that after the bonds mentioned in the first cause of action were purchased, subsequent purchases were made at which times the first contract was "acknowledged, admitted and renewed," and that if appellant had suggested when the second and succeeding purchases were made it would no longer be obligated, an immediate demand for repurchase would have been made. This may all be true, but it is not alleged in the first cause of action that the contract there alleged was extended, renewed or in any wise affected by any subsequent acts of the parties, and what is said in the second, third, fourth and fifth causes of action is no part of the first cause of action.

It is urged by appellant, however, that we should take judicial notice of our economic situation; that a crisis occurred in the bond market of 1929, and for that reason the period for demand should be otherwise shortened. It is not intimated, however, that appellee knew there was to be any stock or bond market crises. We are not prepared to say in this case that, as a question of law, the time within which plaintiff should have made his demand for repurchase should be shortened on account of the financial situation. If we took notice of it at all, we should have to take notice of the market value of the specific bonds involved in this suit, a thing we cannot and will not do.

We are of the opinion that, no extraneous reasons having been alleged, a reasonable time in which to make demand for performance of the contracts alleged herein would be not in excess of that period in which an action on a contract not in writing might be brought, or three years. Gauged by this standard, it appears that as to the

bonds mentioned in the first cause of action demand for repurchase was made too late; that as to the bonds mentioned in the other causes of action it was in time. What has been said above refers to making of demand and not to bringing of suit. The demand was made in August, 1930. The suit was brought in December, 1931. We cannot say, as a matter of law, there was any undue lapse of time between demand and bringing of suit. If there are any facts which should be brought to the court's attention as bearing on the question of delay, they should be presented by answer.

The judgment of the lower court denying defendant's motion to strike the sixth paragraph of plaintiff's first cause of action, and similar allegations incorporated by reference in the remaining causes of action, and overruling defendant's demurrer to plaintiff's first cause of action, are reversed, and the cause is remanded with instructions to allow the motion and to sustain the demurrer to the first cause of action. In other respects the judgment is affirmed.