No. 34,299

VICTOR TRAVIS et al. (*Plaintiffs*) ; OLEN C. SEAMANS, *Appellant,* v. PEARL GLICK et al. (KENNETH CHARLES SEAMANS, Intervenor, *Appellee*).

(91 P. 2d 41)

Opinion filed June 10, 1939.

D. F. *Stanley,* of Mankato, for the appellant.

J. W. *Ross* and J. R. *White,* both of Mankato, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to partition real estate. Judgment was for an intervening petitioner. Plaintiff appeals.

The action was brought against the record title holders to 240 acres of land. The defendants were all heirs of Isaac Nees. The plaintiff was the husband of one of the heirs who had died before the action was brought. The plaintiff claimed to be the owner of an undivided one-fifth interest in the land in succession to his wife.

The petition alleged that subsequent to the death of Isaac Nees, Edith Jewell Seamans died intestate, leaving as her only heirs her husband, the plaintiff, and her only child, Kenneth, and thereafter Kenneth conveyed his right, title and interest in this real property to the plaintiff.

The prayer was for a partition of the real estate.

Kenneth Seamans filed an intervening petition. In it he first denied all the allegations of the petition and denied that the plaintiff was entitled to any interest in the land. The intervening petition then alleged that the plaintiff had been at all times mentioned a nonresident of Kansas and a resident of Missouri; that during her lifetime his mother inherited from her father an undivided one-fifth interest in the land in question; that by the terms of the will of Isaac Nees, if the mother of the intervenor did not convey this undivided one-fifth interest it would descend entirely to the intervenor, and that the residuary clause of the will was as follows:

"The remainder and residue of my estate I give and bequeath to my daughters hereinafter named, share and share alike, or in the event of the decease of either of them, the share of the deceased daughter shall be paid to their heirs, the issue of their own body."

The petition then alleged that on or about September 27, 1927, when the intervenor was but two days over twenty-one, he executed a warranty deed to plaintiff for all his right, title and interest in the land in question. The petition then alleged that either by mistake and the wrong understanding of the facts which would amount to fraud on the intervenor, or through intent to defraud the intervenor, the plaintiff stated to the intervenor at the time the deed was executed that plaintiff had inherited one-half of the land that was devised to Edith Seamans, and that the intervenor had inherited the other half; that the intervenor had always placed faith and confidence in his father, and believed the statement. The petition further alleged that plaintiff told intervenor that he desired to purchase the half interest at a price that would be more than it was worth in order to protect the interest of intervenor, and that the intervenor believed this statement and believed that he owned only a half interest of his mother's interest in the land, and he would not have executed the deed had he not believed plaintiff, and he had only within a month or six weeks before filing the intervening petition learned that he had inherited the entire interest of his mother, and that he was misled either through ignorance of the facts or intentional design by the plaintiff into believing that he had inherited but a one-half interest in the lands from his father. The petition further alleged that the consideration for the deed was $1,500; that plaintiff had not paid, and did not intend to pay that amount, and $1,500 was an inadequate consideration for a one-fifth interest in the lands; that he had only been paid two years' interest on the $1,500, and no part of the principal had been paid. The petition further alleged that at the time of the execution of the deed the plaintiff promised to give the intervenor a lien on the one-tenth interest to secure the payment of the purchase price, and that this price was to be paid five years from the date of the deed, with interest at six percent, but that plaintiff had refused to execute the security or to make payment of the indebtedness. The petition further alleged that on or about May 18, 1929, the plaintiff executed with other grantors a deed to one quarter section of land in question to one Topliff for $1,800; that on or about March 26, 1930, one U. S. Gooding, by conveyance from plaintiff and his wife, became the record title holder of an undivided four-fifths in another quarter section of the land in question for a consideration of $1,600; that these transfers were made without the knowledge of the intervenor and came to his attention only

within two or three months before the filing of the intervening petition. The petition further alleged that the plaintiff received as distribution from the fruits of these lands in the matter of the estate of Isaac Nees from 1928 to 1931 in the aggregate the sum of $1,144.65, and that he received in the aggregate $735 as his share in the sales just mentioned. The petition further alleged that he did not know the amount of rents received by plaintiff, but asked for an accounting. The petition further alleged that if it should be determined that the deed from the intervenor to plaintiff conveyed a one-tenth interest in the land that there was still due and owing from plaintiff to intervenor the sum of $1,500, with interest at six percent per annum from September 27, 1929, until paid, and if through the misinformation, ignorance of the facts or through intentional fraud of plaintiff the deed should be set aside then intervenor should be decreed to be the owner in fee simple of a one-fifth interest in the lands in question. The intervenor made no claim against the purchasers of the land.

The prayer of the petition was that the intervenor be decreed the owner of a one-fifth interest in the land; that plaintiff be required to account for rents and profits and for the proceeds received from the sale of the lands, and that the deed given by the intervenor to plaintiff be set aside, and that one-fifth of the proceeds of the sale of the land be paid to the intervenor or that the deed be reformed to recite that it conveys only a one-tenth interest in the land, and that the court decree that a first and prior lien be adjudged against this one-tenth interest for the payment out of the sale of one-tenth interest of the purchase price of $1,500, with interest thereon at six percent per annum until paid. The prayer further asked that plaintiff be required to account for one-half of the proceeds that he had received from the fruits of these lands and for one-half of the proceeds of the sale of the lands to Topliff and Godding.

A judgment in partition was granted and one-fifth of the price for which the land was sold was impounded with the clerk of the court and is being held awaiting the outcome of this appeal.

Subsequently an amendment to the original intervening petition was filed in which intervenor alleged that at the time he made the deed in question the plaintiff told the intervenor that a mortgage had been executed by him to secure the payment of the $1,500; that plaintiff, being the father of intervenor, had implicit faith and confidence in him and believed that a mortgage had been executed; that

at the same time plaintiff told intervenor that he would keep the mortgage so that it would not become lost or destroyed and would deliver it to intervenor when requested; that intervenor has often requested the delivery of this mortgage, but that such delivery had been refused; that had this intervenor not believed the statements of plaintiff he would not have made the deed in question.

In reply to the above pleading, the plaintiff first filed a general denial. The plaintiff then alleged that on and after September 17, 1927, and until the filing of the answer and cross petition, the plaintiff was personally present within the state of Kansas for approximately seven years; that all claims of the intervenor were barred by the statute of limitations. The reply further alleged that subsequent to the death of his wife he reminded intervenor that the undivided one-fifth interest in the land in question formerly owned by the wife of plaintiff was subject to a mortgage to the Citizens State Bank of Jewell City, securing the sum of $7,800; that the intervenor was becoming indebted to various individuals; that the plaintiff stated he would take care of these debts as far as he was able, but would require a conveyance from the intervenor of his interest in the land as soon as he became of age; that intervenor would convey to plaintiff in such a manner as to release any claim plaintiff had in the real estate; that in the course of the conversations the intervenor told plaintiff shortly before May, 1927, that the intervenor, as soon as he became of age, would convey to plaintiff all his right, title and interest in the land if plaintiff would take care of the mortgage heretofore referred to and so far as he was able would pay the intervenor's no-fund checks and accounts; that the decision and judgment in the case of *Allen v. Nees* did not adjudicate the matter of the intervenor's being solely entitled to his mother's interest in the land in question; that pursuant to these conversations plaintiff paid no-fund checks and other indebtedness of the intervenor in the amount of between $1,500 and $2,000 and paid the mortgage debt to the Citizens State Bank. The reply further alleged that shortly after the intervenor became of age he executed and delivered to plaintiff the deed in question; that at that time the interest of intervenor in the property was worth not to exceed $50 an acre and intervenor inherited this interest subject to the mortgage of the Citizens State Bank, and plaintiff, in reliance upon this oral understanding, paid the no-fund checks and accounts and discharged the mortgage; that thereafter the intervenor remained a

resident of Kansas and was chargeable with knowledge of his own debts, of the mortgage and of the settlement of the estate of Isaac Nees, and knew of his own deed to the plaintiff; that if any demand existed on behalf of the intervenor it was offset by the cross demand of the plaintiff in discharging the above indebtedness, and unless compensated plaintiff was the owner of the mortgage for $7,800.

As an amendment to this reply the plaintiff alleged that the mortgage spoken of was the accumulated amount of borrowings of plaintiff and his wife during her lifetime.

With the issues thus made up the trial court made findings of fact and conclusions of law, as follows:

FINDINGS OF FACT

"1. The controversies presented in this matter to the court are between Kenneth Charles Seamans, intervenor, and his father, Olen C. Seamans, who was one of the plaintiffs in the partition suit. The intervenor was not made a party to the partition suit, and he therefore became an intervenor for the purpose of presenting his claims, which are prosecuted in this case, not against the land in question, but against the proceeds of the sale of a one-fifth interest in the land involved in the partition action, the proceeds of which are impounded by the court. The original title to the land, the proceeds of which are in question, so far as this controversy is concerned, trace back through Isaac Nees, who disposed of his property by will, and by a residuary clause in the will devised the property involved in this controversy to his four daughters and one granddaughter. The only part of the estate involved in this controversy is that which was devised to Edith Jewell Nees, one of the daughters of the testator, and the mother of the intervenor and the wife of Olen C. Seamans. The residuary clause of the will of Isaac Nees, which has been duly probated in the probate court of Jewell county, Kansas, reads as follows: 'The remainder and residue of my estate I give and bequeath to my daughters hereinafter named, share and share alike, or in the event of the decease of either of them, the share of the deceased daughter shall be paid to their heirs, the issue of their own body.'

"2. Isaac Nees died May 29, 1922. By the above quoted residuary devise Edith Jewell Seamans acquired an undivided one-fifth interest in the lands, the proceeds of which is involved in this action.

"3. On the death of Edith Jewell Seamans, who died intestate, in July, 1926, her only living child, a son, the intervenor, inherited all of her interest, an undivided one-fifth interest, in the land of his grandfather, Isaac Nees, by virtue of the will of Isaac Nees, then deceased.

"4. When his mother died, the intervenor, Kenneth Charles Seamans, was a minor of the age of nineteen years. He became of age September 26, 1927.

"5. Olen Seamans did not inherit any part or interest in the Nees land from his wife, Edith Jewell Seamans, at the time of her death.

"6. In 1925 Edith Jewell Seamans and her husband, Olen C. Seamans, moved to Kansas City, Mo., where Olen C. Seamans worked for various live-

stock commission firms, and on his own account, his work taking him into the state of Kansas frequently.

"7. In 1925, when Olen C. Seamans and his wife went to Kansas City, he owed the Citizens State Bank of Jewell City, Kan., between $6,000 and $8,000, which indebtedness was the accumulation of years prior thereto, and was originally secured by chattel mortgage on the property of Olen C. Seamans and Edith Jewell Seamans.

"8. On March 1, 1926, Edith Jewell Seamans and her husband, Olen C. Seamans, gave a note and mortgage on Edith Jewell Seamans' undivided one-fifth interest in the real estate she received through the will of her father, Isaac Nees, to secure the payment of $7,800 to the Citizens State Bank of Jewell City, which indebtedness was also secured by the prior chattel mortgage referred to in finding number 7 and by the pledge of a contract of Edith Jewell Seamans and her husband, Olen C. Seamans, for lands Olen C. Seamans had agreed to purchase, and had formerly belonged to his father, then deceased, on which contract Edith Jewell Seamans had paid $3,000 of her own individual funds.

"9. The land sold in the partition suit, the proceeds of which are involved in this controversy, was reasonably worth, in 1927, about $50 per acre, or $———.

"10. After the death of Edith Jewell Seamans, the bank threatened to foreclose their mortgage on the lands formerly owned by Edith Jewell Seamans, and plaintiff returned from Kansas City to Jewell county to discuss this situation with the intervenor, Kenneth Charles Seamans, and his creditor, the Citizens State Bank of Jewell.

"11. Kenneth Charles Seamans, although a minor, remained in Jewell county when his father and mother went to Kansas City. He received and used his own wages, attended high school in Jewell county, and also attended business college in Concordia for over a year, the school expenses being paid for by his parents.

"12. At Concordia, and elsewhere, Kenneth Seamans, while a minor, incurred debts and liabilities, some of which were no-fund checks, and most of which were paid by his father, Olen C. Seamans.

"13. In March, 1927, Olen C. Seamans and Kenneth Charles Seamans, in Jewell county, talked over the indebtedness of each other. The father suggested to the son that he might take over the Nees land formerly owned by his mother. Kenneth Charles Seamans stated that he could not refinance the land himself, and Olen C. Seamans told his son, Kenneth Charles Seamans, that he, Olen C. Seamans, would take over said land, forgive the payments made for Kenneth Charles Seamans' benefit, and pay other obligations that were discussed at that time, amounting to $1,500, if Kenneth Charles Seamans would execute a deed to all his interest when he became of age on September 26, 1927. The intervenor orally agreed to do this.

"14. Olen C. Seamans requested L. E. Weltmer, a lawyer of Mankato, to prepare such a deed, to be executed by Kenneth Charles Seamans, and L. E. Weltmer prepared said deed. On September 27, 1927, Kenneth Charles Seamans, in compliance with the oral agreement mentioned in finding number 13, appeared at the office of L. E. Weltmer, where said deed was read over to

him, and discussed by him and L. E. Weltmer, and was signed and acknowledged before F. R. Fair, a notary public, in another office, and was made a matter of record in the register of deeds office of Jewell county, Kansas, on September 27, 1927, at 10 a m., the same day of its execution, and was then mailed to the plaintiff at Kansas City.

"15. The mortgage given on the Nees land inherited by Edith Jewell Seamans to the Citizens State Bank was released and receipt of payment of $7,800 acknowledged from Olen C. Seamans and wife on May 27, 1927.

"16. Olen C. Seamans claimed after the death of his wife that he inherited from his wife an undivided one-half interest of the one-fifth interest in the Nees land owned by his wife, and that his son, Kenneth Charles Seamans, inherited the other half, and this was the claim and the belief of Olen C. Seamans for many years after the death of his wife, including March, 1927, when he and Kenneth Charles Seamans discussed their indebtedness, and came to an oral understanding in reference to the transfer of Kenneth Charles Seamans' interest in the land of his mother.

"17. Olen C. Seamans informed his son, Kenneth Charles Seamans, that he, Olen C. Seamans, inherited one-half of Edith Jewell Seamans' interest of the lands of her father, and Kenneth Charles Seamans believed this, and believed at the time, and on September 27, 1927, when he deeded his interest in said lands to his father, that he had only an undivided one-half interest in the land of his mother.

"18. Kenneth Charles Seamans, at the time he executed said deed, thought he was the owner of, and intended to convey said undivided one-tenth interest in said land, and Olen C. Seamans, the grantee in said deed, thought he was receiving title by said deed to an undivided one-tenth interest in said land from Kenneth Charles Seamans.

"19. To Olen C. Seamans the deed, in question in this controversy, transferred from Kenneth Charles Seamans only an undivided one-tenth interest in the lands described therein, viz., the west half of the northeast quarter, and the east half of the northwest quarter of section 29, township 4 south, range 8, and the southwest quarter of the southeast quarter of section 7, township 5 south, range 8, and the northwest quarter of the northeast quarter of section 5, township 5 south, range 8, and the east half of the southwest quarter of section 34, township 4 south, range 8, all in Jewell county, Kansas.

"20. After the execution of the above-mentioned deed by Kenneth Charles Seamans to his father, Olen C. Seamans, his father claimed he had title to the undivided one-fifth interest in the Nees lands owned by his wife during her lifetime. This claim of ownership was made by Olen C. Seamans believing the conveyance by the deed heretofore mentioned of Kenneth Charles Seamans, to Olen C. Seamans, conveyed an undivided one-tenth interest to the lands therein described, and believing that he inherited from his deceased wife her other undivided one-tenth interest in said land.

"21. After the execution of the deed from Kenneth Charles Seamans to his father, Olen C. Seamans, he, with the residuary legatees, agreed to the appointment of Leslie Breed as agent for the sale of eighty acres of the land described in the deed of Kenneth Charles Seamans to his father, Olen C. Seamans, to which arrangements Kenneth Charles Seamans made no objection,

he believing that his father, Olen C. Seamans, had inherited an undivided one-half interest in his mother's land, and that he had conveyed to his father his, Kenneth Charles Seamans', undivided one-half interest in said land.

"22. The lands sold by Leslie Breed for the residuary legatees were sold for $3,800, and Olen C. Seamans received from said proceeds the sum of $760.

"23. After September 27, 1927, Olen C. Seamans received rents from his claimed undivided one-fifth interest in land sold by Leslie Breed and the land sold in this partition action, the sum of $998.35, the same being the undivided one-fifth interest of the rentals and income from all of said land.

"24. Kenneth Charles Seamans did not find out that his father did not inherit from his, Kenneth Charles Seamans' mother, an undivided one-half interest in the lands she received from her father's estate until about the month of October, 1937.

"25. The will of Isaac Nees was admitted to probate in the probate court of Jewell county, Kansas, June 12, 1922, and the administrator was discharged June 24, 1932.

"26. A confidential relationship existed between Olen C. Seamans and his son, Kenneth Charles Seamans, during the minority of said son, and on September 27, 1927, when the deed in question was executed by the son to the father, and such condition continued to exist on the part of Kenneth Charles Seamans until after he received the letter introduced in evidence from his father in October, 1937.

"27. The court finds that Olen C. Seamans is the owner of a $6,000 note which was paid May 27, 1927, and that he is the owner of this mortgage introduced in evidence, as Olen C. Seamans' exhibit No. 2, and also of the receipt on the back of it, which recites that it has been paid in full by Olen C. Seamans and wife, which mortgage was given to secure the $6,000 note, which is marked paid, and which mortgage is released.

"28. The court finds that Olen C. Seamans pledged his interest in Nees land to his wife, Dr. S. A. Carter, whose real name was Mrs. Olen C. Seamans; that his interest in the land at that time was an undivided one-tenth interest; that the instrument never was made a matter of record in this county, and is not at this date a matter of record, and the evidence does not disclose Kenneth Charles Seamans had any notice of the execution of the instrument referred to until the trial of this case."

"CONCLUSIONS OF LAW

"1. The deed of Kenneth Charles Seamans, dated September 27, 1927, conveyed to the grantee, Olen C. Seamans, an undivided one-tenth interest in the land described in said deed and set out in finding 19.

"2. Kenneth Charles Seamans is the owner of an undivided one-half interest in the rents and profits accruing after September 27, 1927, and the sale price of said lands and also from the lands sold by Leslie Breed, received by Olen S. Seamans.

"3. Kenneth Charles Seamans is the owner of and entitled to an undivided one-half interest in the proceeds of an undivided one-fifth interest in the lands sold in this partition action, as belonging to Olen C. Seamans, which proceeds are now in the hands of the clerk of this court.

"4. The plaintiff, Olen C. Seamans, should pay the costs of this hearing."

The judgment was that the intervenor recover judgment against the plaintiff in the sum of $1,591.40.

The plaintiff appeals from the judgment and all intermediate orders. His argument is that the facts found by the trial court do not support the judgment.

Plaintiff argues that the findings show that the intervenor is precluded by the statute of limitations. This argument requires careful examination. At the outset it should be stated that the period of limitations that applies to this action is two years. (See *Hamill v. Hamill*, 134 Kan. 715, 8 P. 2d 1077.)

It will be noted that the court made extensive findings of fact. In such a case it will be presumed that all the facts the court deemed necessary to support its judgment were included in the findings. If these findings lack essential facts necessary to sustain the judgment of the court the judgment cannot stand and must be reversed. (See *Young v. Washington County Comm'rs*, 127 Kan. 227, 273 Pac. 398; *Carlgren v. Saindon*, 129 Kan. 475, 482, 283 Pac. 620; *Martin v. Scott Lumber Co.*, 127 Kan. 391, syl. ¶ 3, and page 394, 273 Pac. 411; and *Frontier Lodge v. Wilson*, 139 Kan. 75, 81, 30 P. 2d 307.)

The will of Isaac Nees, the grandfather of intervenor, was admitted to probate in Jewell county June 12, 1922. The case of *Allen v. Nees* was filed and decided before the death of the mother, and hence before the execution of the deed we are considering.

The intervenor, who became of age September 26, 1927, and before the execution of the deed to his father, was bound to take notice of the public records of his own title to the property, as was his father. If he had no actual notice of these records he had constructive notice of them, which prevents him from claiming that he did not discover his alleged interest, and the alleged fraud of his father, until 1937, and he cannot claim that the statute did not begin to run until then. (See *Black v. Black*, 64 Kan. 689, 68 Pac. 662; *Duphorne v. Moore*, 82 Kan. 159, 107 Pac. 791; *Walline v. Olson* 84 Kan. 37, 113 Pac. 426; *Foy v. Greenwade*, 111 Kan. 111, 206 Pac. 332; *Hamill v. Hamill*, 134 Kan. 715, 717, 8 P. 2d 311; *Smith v. Rector*, 135 Kan. 326, 10 P. 2d 1077; *Johnson v. Jusick*, 137 Kan. 147, 19 P. 2d 433.)

The findings are insufficient to show that the statute was tolled so that the son might maintain his action in 1937. In finding No. 6 the court found that the plaintiff moved his residence to Kansas

City, Mo., but found that he was in Kansas frequently. The mere legal residence of the father in a foreign state is not the test of whether the statute is tolled. The court must find that the party was personally absent from the state. (See *Dixon v. Windscheffel,* 88 Kan. 824, 129 Pac. 938; *Miller v. Baier,* 67 Kan. 292, 72 Pac. 772; *Investment Co. v. Bergthold,* 60 Kan. 813, 58 Pac. 469; and *Bowman v. Bowman,* 134 Kan. 477, 478, 7 P. 2d 521.)

Moreover, the court found that the plaintiff was employed by certain Kansas City livestock commission firms. In the briefs it is said that the evidence showed he was in Kansas every day while he was engaged in this work. This is not disputed. This court will take judicial notice of the fact that the livestock yards and pens of the Kansas City livestock market are located on the state line between Kansas and Missouri and also within the state of Kansas. (See *Patterson v. Railway Co.,* 77 Kan. 236, 94 Pac. 138; *State v. Novak,* 116 Kan. 393, 394, 227 Pac. 790; *Chaput v. Demars,* 120 Kan. 612, 244 Pac. 1042; and *State, ex rel., v. Storey,* 144 Kan. 311, 315, 58 P. 2d 1090.) Hence, the finding pointed out falls far short of establishing that plaintiff was absent from Kansas during the time mentioned.

There is a further reason why the statute was not tolled.

The intervenor's action was for the purpose of having a constructive trust declared in the land in his favor. He also asked that the deed be reformed to convey an undivided one-tenth interest in the land. He based these prayers on the alleged fraud of his father. This sort of an action could have been begun at any time, and constructive service had upon the plaintiff by publication. This court held in *Herthel v. Barth,* 148 Kan. 308, 81 P. 2d 19, that in such an action the absence of the defendant from the state did not toll the statute, and that the action should have been brought within two years from the time when the cause of action accrued. (See G. S. 1935, 60-306, *third.*)

This action was one to declare a constructive trust to set aside or reform a deed. It was a suit in equity. Apart from any question of statutory limitation, courts of equity will discourage laches and delay in the enforcement of rights. We have concluded that there was such a change of circumstances here, in that the land has depreciated to such an extent that the plaintiff will not realize the amount he put into it, and the plaintiff having paid off a large mortgage in reliance upon the agreement, the above facts, together with the delay in bringing the action, constituted laches. (See *Thompson v. Milli-*

*kin,* 93 Kan. 72, 143 Pac. 430; *Rice v. Kilworth,* 132 Kan. 418, 295 Pac. 700; *Edwards v. Moore,* 143 Kan. 447, 54 P. 2d 983, 19 Am. Jur. 339.)

We have concluded, therefore, that the intervenor is barred by the lapse of time from maintaining this action.

The judgment of the trial court is reversed with directions to render judgment for the plaintiff.